HUGH CLARK AND WIFE *v.* D. K. WILSON ET AL.

1. POWER. DEED. *Trustee and cestui que trust. New appointment.*
   Upon a conveyance in trust, the deed is the source and limit of the powers, duties and rights of trustee and *cestui que trust.* There is no inherent right in the creditor secured by trust deed to appoint a new trustee. It is only by express authority conferred on the *cestui que trust* to name another trustee that such power can be exerted.

2. TRUSTEE. *New appointment, when no provision therefor in the deed. Chancery Court.*
   If the trustee dies, becomes unable, or declines to execute the trust, and no provision is made for a successor, the vacancy can only be filled by the Chancery Court, which never permits the trust to fail because the appointee of the grantor cannot or will not execute it.

3. POWER. *Should designate what. Acts of new appointee invalid when.*
   When a power is granted, the authority should designate the person by whom, as well as the event or circumstances upon which, it may be exerted. If a person not named or distinctly described by his office or character makes the appointment, or if the circumstances do not warrant it, or there be serious irregularities in executing the power, in all these cases the acts done by the new appointee will be invalid, and the original trustee will not be exonerated or discharged.

4. SAME. *Not assignable when. The debt carries the security. Case in judgment.*
   C. executed a deed of trust on certain lands to M., to secure a debt to H. & M. The deed contained this provision: " Should said second party (M.) fail from any cause to act herein, then said third parties (H. & M.) may appoint, in writing, any one else to execute this ⸱trust, with every power, title, and right, as well as duty, touching the same." *Held,* that no power was conferred on the assignee of H. & M. to appoint a new trustee, that no estate was granted to H. & M., and that they could transfer none distinct from the debt. The assignment of the debt carries the security.

5. SAME. *Cestui que trust. Personal. Not assignable.*

A power conferred on the *cestui que trust* is personal or in gross, and is a
confidence reposed in him which he cannot delegate to another, unless
expressly authorized by the donor.

6. BANKRUPT LAW. § 43. *What passes to trustee.*

Under § 43 of the bankrupt law, unless property or estate is benefi-
cially in the bankrupt, and may be applied for creditors, it does not
pass to the trustee. Property held by the bankrupt purely in trust
for another does not pass. The trustee takes the property, rights or
interest in or to property, choses in action, &c., precisely as the
bankrupt was owner, or had interest in the same, but only such as
may be valuable to or made available to the creditors. A power to
the bankrupt purely in personal trust and confidence, not being in its
nature assignable, does not vest in the trustee.

APPEAL from the Chancery Court of Yazoo County.

Hon. THOMAS WALTON, Chancellor.

On the fourteenth day of August, 1873, Hugh Clark and
wife conveyed to W. W. Mangum certain described lands, to
be held in trust for the benefit of Harrison & McLaren, mer-
chants. The object of the conveyance was to secure the
payment of a debt due by Clark to Harrison & McLaren
for advances made and to be made by the latter parties to
the former. The deed empowered the trustee, upon default
of payment of the debt secured, to take possession of the prop-
erty, sell the same, after first giving five days' notice, and apply
the proceeds thereof to the payment of the debt. The deed
also contained this provision : " And should said second party
fail from any cause to act herein, then said third parties may
appoint, in writing, any one else to execute this trust, with
every power, title and right, as well as duty, touching the
same." In the deed of trust, Hugh Clark and his wife were
described as the parties of the first part, W. W. Mangum,
trustee, as party of the second part, and Harrison & McLaren
as the parties of the third part.

Some time subsequent to the execution of this deed, Har-
rison & McLaren were adjudicated bankrupts, and John T.
Jennings and W. M. Ingram were appointed trustees' of their
estate under the bankrupt law. On the third day of March,
1874, Jennings and Ingram, in writing, appointed John Thomp-
son in the place of Mangum, as trustee under said deed. The

reason for such new appointment, as stated, was, that Mangum was "unable, on account of absence from the county, to execute the trust confided to him in the deed." The proof at the hearing showed that Mangum was out of Yazoo County, but residing in Washington County of this state at the time of the appointment. On the twentieth day of March, 1874, Thompson, after first giving notice of sale as required by the deed of trust, sold the land therein described to D. K. Wilson, for $725, and executed to him a deed for the same.

Wilson thereupon instituted an action for unlawful detainer, to recover of Clark the possession of the land purchased from Thompson as trustee. Clark and wife, on the twentieth day of April, 1874, filed their bill in the Chancery Court, against Harrison & McLaren, Jennings and Ingram, and Thompson and Wilson, praying that an account be taken between the parties, and that Wilson be enjoined from proceeding further in his said action. The Chancellor granted a temporary injunction, as prayed. The defendants all answered the bill. Both sides took testimony. The defendants made a motion to dissolve the injunction; and, on the eighth day of July, 1874, the court dissolved the injunction on bill, answers, exhibits, and proofs. Clark and wife appealed to this court.

*A. M. Harlow,* for the appellants.

1. There was in the deed of trust a provision, in these words: "And should said second party fail from any cause to act herein, then said third parties may appoint in writing any one else to execute this trust, with every power, title and right, as well as duty, touching the same." We insist that the words just quoted cannot be considered as sufficient to constitute or create a power at all, under which the parties of the third part could act. Upon this point the authorities say, that, "in framing these powers, the greatest care should be taken to provide for every possible contingency in which a change or new appointment of trustees may become necessary or desirable, so as to obviate the expense and trouble of an application to the Court of Chancery." Hill on Trustees, 281; Perry on Trusts, § 288. "The power should express plainly the cases in which new trustees may be appointed, and when and by whom the appointment is to be made: it should also embrace

every event that can render such appointment necessary; viz., the death of all or any one or more of the original or substituted trustees, their absence from the country, their wish to retire from the office, or their original refusal to accept it, or, finally, their incapacity to discharge its duties." Hill on Trustees, 281. The point has been disposed of by our High Court of Errors and Appeals, and is not now a question. *Guion* v. *Pickett*, 42 Miss. 81.

2. Was there a valid execution of the power, if any existed? Harrison & McLaren were the persons authorized to exercise the power of appointing a new trustee. Could Jennings and Ingram execute the power? A very high authority has said that " a question can seldom arise as to the parties by whom the power is to be exercised." That must, of course, always depend on the terms of the power itself. " According to the general rules that govern the laws affecting powers, a power of appointing new trustees can be exercised only by those persons to whom it is expressly given." Hill on Trustees, 289, 290; Perry on Trusts, § 294. " The power cannot be exercised by the heirs, or personal representatives, or assignees, of any trustee, unless the authority be thus limited by the terms of the original power." Hill on Trustees, 290; 1 Sugden on Powers, 145; Perry on Trusts, § 294. The power will be confined to those persons who answer the precise description. Hill on Trustees, 290. Harrison & McLaren could not delegate their power to another; nor does the power pass by assignment, or otherwise, to their legal representatives. If the power be given to the donee and his assigns, it will pass by assignment. 4 Kent, 345; *How* v. *Whitfield*, 1 Vent. 338, 339. But in this case no power can pass to the assignees or legal representatives of the donee. The position of counsel for the appellees cannot be sustained under the provisions of the bankrupt law. When we say that the power of appointing a new trustee is a personal trust, and can be exercised only by those to whom it is expressly given, and is not one of those powers which pass to the assignee or the legal representatives of the donee, our interpretation does not interfere with the assignee's " rights of action," nor his rights in " any cause of action which the bankrupt had against any person," nor " his

rights of redeeming such property or estate," nor his "right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend " " such property or estate owned by the bankrupt at the time of adjudication."

3. If there be any irregularity in the mode of exercising the power, the appointment will be bad. Hill on Trustees, 281; *Adams* v. *Paynter*, 14 L. J. N. s. Ch. 54; 1 Coll. Ch. 532; *Walker* v. *Brungard*, 13 S. & M. 723. The conditions annexed to the exercise of a power must be strictly complied with. 4 Kent, 348, 349. The attempted exercise of the power by Jennings and Ingram was null and void. " No power can be executed except by some instrument in writing, which would be sufficient in law to pass the estate or interest intended to pass under the power, if the person executing the power were the actual owner." 4 Kent Com. 351. The record does not show the execution of any instrument in writing which could pass a title to Thompson. Conveyances should be declared by writing, signed, sealed, and delivered and acknowledged. Code 1871, § 2302. Declarations of trust in land should also be in writing, signed, sealed, delivered and acknowledged. Code 1871, § 2896. And all grants, assignments, or transfers of any trust or confidence signed and acknowledged. Code 1871, § 2897.

4. It was error in the court to dismiss the bill, without having granted an order of reference, and thus affording to the complainant an opportunity of showing, if he could, errors and mistakes made to the prejudice of the complainant.

*W. L. Nugent,* on the same side.

1. The trust deed, under which the defendant claims title, authorizes Hiram Harrison and Lawrence McLaren, the *cestuis que trust,* if the trustee designated in the deed failed from any cause to act, to appoint in writing any one else to execute the trust. This power could only be exercised by them. It is the general rule that the power of appointing new trustees is restricted to those to whom it is expressly given. Hill on Trustees, 184.

2. The Bankrupt Act does not vary the rule. Under that law, the title vested in Jennings and Ingram, trustees, is the same as that vested in an assignee regularly appointed in bankruptcy proceedings; and they became owners of the debt

secured by the trust deed, and were entitled to have the security enforced for its payment. In no sense, however, could they be the donees of the power conferred by Clark and wife upon Harrison & McLaren, or have that power devolved upon them by the operation of the bankrupt law, which owed its origin to the act of the grantors in the deed. Bump's Bankruptcy, 554; *In re Williams*, 2 B. R. 79. The simple-minded negro who executed the deed must have had great confidence in his chosen trustee and the *cestuis que trust*, for whose benefit the deed was executed, but certainly never intended that strangers to him and the contract should have the extraordinary power confided to his original creditors, nor that it should be exercised in any but the contingency stipulated.

*Hemingway* and *Harris*, for the appellees.

The only question in the case here presented which can claim the serious consideration of this court is, whether the appointment of Thompson as trustee in place of Mangum clothed him with the power conferred upon Mangum by the deed of trust.

1. It is contended by counsel for the appellants that the power to appoint a new trustee was not assignable, and could not pass to the trustees of Harrison & McLaren. In considering the subject of powers, it is proper to distinguish clearly between a personal power or confidence reposed, and a power coupled with an interest or annexed to an estate. Powers of the former class are unassignable, those of the latter are assignable. To which class does the power in question belong? The power of sale conferred upon a naked trustee is a personal power, and the trustee cannot assign his trust under any circumstances. An appropriate instance of a power coupled with an interest or annexed to an estate is found in a mortgage with power of sale. Such a power, even when conferred upon the mortgagee in his individual name, and not as the party of the "second part," passes with his interest or estate by assignment, and can be exercised by the assignee. *Bradly* v. *Chester Valley Railroad*, 36 Penn. St. 151; *Wilson* v. *Troup*, 2 Cowen, 236, 237; *Sargent* v. *Howe*, 21 Ill. 149; *Hannah* v. *Conington*, 18 Ark. 106.

2. Is there any difference between a mortgage with power

of sale and a deed of trust, like the one in this case ?   The only
difference is, that in one the power of sale is in the creditor,
while in the other it is in a third party.   *Sargent* v. *Howe*,
21 Ill. 149.   Deeds of trust of the class to which the one in
this case belongs are, in all their legal effects and bearings,
mortgages, and are so regarded and treated in law.   *New-*
*man* v. *Samuels*, 17 Iowa, 536 ; *Woodruff* v. *Robb*, 19 Ohio,
212 ;  *Coe* v. *McBrown*, 22 Ind. 257.   The instrument in this
case, though commonly called a deed of trust, is in its legal
aspects a mortgage.   The *cestuis que trust* occupy the same
position as a mortgagee ; either is a creditor ; the estate of
the debtor is pledged to secure the debt of either ; the mort-
gage or deed of trust will become void on the payment of the
debt of either ; and either holds and exercises any power that
may be conferred on him, as coupled with or annexed to his
interest, and for his own benefit as a creditor.   And it is im-
possible to get the idea of naked or personal confidence, where
a mortgagee or *cestui que trust* is the donee of a power.

3. If the mortgagee with power of sale can assign his debt
and the power incident thereto, why cannot the *cestui que trust*,
who is in all respects material to this case a mortgagee, assign
his interest and the power annexed thereto to appoint a new
trustee ?   It certainly cannot be contended that the power of
appointment is any greater, or should be any more of a per-
sonal confidence, than the power of sale.

4. The language of the empowering clause of the deed
maintains the view that the power was coupled with the
interest of the creditors, and given for their benefit.   The debt
was due from Clark to the " parties of the third part " in the
deed, and the power was given to the " parties of the third
part."   At that time Harrison & McLaren were the parties of
the third part, but now Jennings and Ingram are the " parties
of the third part."

5. But if it were admitted that a power conferred upon
a *cestui que trust*, in connection with his interest, could not
ordinarily pass by assignment of such interest, this case would
form an exception to the general rule.   § 43 of the bankrupt
law provides that the bankrupt, or his assignee, " shall, under
the direction of the court, and under oath, convey, trans-

fer, and deliver all the property and estate of the bankrupt to the trustees, who shall, upon such conveyance and transfer, have and hold the same in the same manner and with the same power and rights in all respects as the bankrupt would have had or held the same if no proceedings in bankruptcy had been taken." Can it be said that the trustees of Harrison & McLaren " have and hold the property and estate of the bankrupts in the same manner " that H. & M. did, unless they have also the power, coupled with the interest, of H. & M. in the land embraced in the deed of trust? Or that they had and held the debt of Clark, and the security therefor, " with the same powers and rights in all respects as the bankrupt would have had or held the same if no proceedings in bankruptcy had been taken " ?

*Harris* and *George*, on the same side.

SIMRALL, C. J., delivered the opinion of the court.

In 1873, Hugh Clark and wife made a deed conveying a tract of land, personal effects, &c., to W. W. Mangum, in trust to take possession of the property, and sell it on default made by Clark in the payment of his indebtedness to Harrison & McLaren, merchants at Yazoo City.

Some time after this, Harrison & McLaren became insolvent, and were adjudicated to be bankrupts. In conformity to the provisions of the bankrupt law, John T. Jennings and W. M. Ingram were appointed trustees.

In March, 1874, these trustees, by an instrument of writing, appointed John Thompson, in the place of Mangum, to execute the trusts declared in the deed of Clark and wife.

On the 20th of March, 1874, Thompson, after posting notice of the sale on the door of the court house five days anterior to the sale, sold the tract of land described in the trust deed to D. K. Wilson, for $725, and executed to him a deed. After his purchase, Wilson instituted the special proceeding given in the " Act in relation to unlawful and forcible entry and unlawful detainer," to recover the possession from Clark.

Clark enjoined that suit for sundry reasons : —

1. Because he positively refused to include his land in

the trust deed, did not knowingly and understandingly sign such deed, or authorize any person to do so for him.

2. Because he does not believe that he is indebted to Harrison & McLaren.

3. Because the trustees of the bankrupts had no authority to substitute a trustee in the place of Mangum.

The first question in logical order is as to the power of the trustees of the bankrupts' estate to appoint a trustee, instead of the one named in the deed.

The clause in Clark's deed is as follows: " Should said second party [Mangum] fail from any cause to act herein, then said third parties [the *cestuis que trust*] may appoint in writing any one else to execute this trust, with every power, title and right, as well as duty, touching the same."

The proposition advanced by the counsel for the appellants is, that the power conferred on the *cestui que trust* is personal and confidential, and did not pass by the conveyance of their property and estate as bankrupts to Jennings and Ingram, trustees.

For the appellees, it is contended that the power was incident to the interest of the *cestui que trust*, and would accompany the transfer of that interest, and vest in the assignee ; and, whether that be true or not, by virtue of the bankrupt law the conveyance therein contemplated from the bankrupts to the trustees carried the power and vested it in them.

It was competent for the grantor, Clark, to confer such power on the trustee as he chose, provided he did not violate the law, and to grant such privileges and rights to his creditors, the *cestuis que trust*, as he might elect. The deed is the source and the limit of the powers, duties and rights of the trustee and *cestuis que trust*.

There is no inherent right in the creditor who is secured by a deed in trust to appoint a trustee in the event of death, resignation, or refusal to act. It is because express authority is conferred on the *cestui que trust* " to name another trustee " that such power can be exerted.

Since all the powers are raised by the grantor, his will, as expressed in the deed, is the measure of their extent. If the

trustee is authorized to sell, the terms, the time and the manner, as prescribed, must be pursued. If the trustee dies, becomes unable or declines to sell, and no provision is made for a successor, the vacancy can only be filled by the Chancery Court, which never permits the trust to fail because the appointee of the grantor cannot, or will not, execute it.

The law does not supply the *cestui que trust* with such power. He does not have it, unless he stipulates for it with the grantor. Nor can those who take by succession from him, as the executor or administrator, make an appointment, unless they are expressly authorized by the grantor to do so. Hill on Trustees, 183; 1 Sugden on Powers, 145; *Bradford* v. *Belfield*, 2 Sim. 264. When the power is granted, it should designate the person by whom, as well as the event or circumstances upon which, it may be exerted. If a person not named, or distinctly described by his office or character, makes the appointment, or if the circumstances do not warrant the new appointment, or there be serious irregularity in executing the power, in all these cases the acts done by the appointee will be invalid; and the original trustee will not be exonerated or discharged. Hill on Trustees, 189; *Guion* v. *Pickett*, 42 Miss. 77.

" Where a party takes under execution, he takes under authority of the power equally as if the power and the instrument executing the power had been incorporated in one instrument." Litt. § 169; Co. Litt. 113 *a; Marlborough* v. *Godolphin*, 2 Ves. 78; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45, 48.

It is claimed by counsel for the appellees that these principles do not apply in this case, because the power is appendant to the estate, and not personal, or, as it is termed, " in gross." A power is annexed to the estate when the donee has an estate in the land, and the estate to be created by the power is to, or may, take effect in possession, during the continuance of the estate to which it is annexed, as the power to a tenant for life in possession to make leases. A power in gross is where a person to whom is given an estate; but the estate is not to take effect, under the power, until after the determination of the estate to which it relates. Co. Litt. 298, note by Hargrave & Butler. A power to the mortgagee to sell is an

example of the former kind ; being annexed to the estate, it is not personal, or in gross, and would not terminate at the death of the mortgagor. 1 Caines's Cases in Error, 15. No power is conferred on the assignees of Harrison & McLaren to appoint a trustee. No estate in the land is granted to them. Nor could they, by deed, raise an estate and transfer it to a purchaser. We mean a distinct estate. They could only assign their interest in the land by an assignment of the debt. The security created by the deed of trust inseparably attends the debt as an appendage to it. An assignment of the principal thing carries with it the security as an appendage. There can be no transfer or assignment, by deed or otherwise, of an estate in the land separate from and independent of the debt. These remarks are applicable alike to deeds of trusts and mortgages. They are essentially the same security, differing only in the form.

It has come to be almost the universal doctrine that the mortgagor, or grantor in the deed of trust, is the real owner of the land, and that it is transmissible from him by deed, descent or devise ; and that the interest of the mortgagee is only regarded as real estate so far as the legal title, after condition broken, may be necessary to give him the benefit of his security. *Strickland* v. *Kirk*, 51 Miss. 795, 799. The mortgage, or deed in trust, is a burden or charge on the land. It would follow, as a corollary from the principle, that the mortgagee, or *cestui que trust*, has no interest or estate in the land, except a charge or burden upon it as a security ; and that neither can transmit that to another except he passes also the debt. In *Jackson* v. *Bronson*, 19 Johns. 325, it was ruled, that there could be no assignment of the mortgagee's interest in the land without an assignment of the debt. Nor is his interest the subject of attachment or sale under execution. *Hutchins* v. *King*, 1 Wall. 53, 58 ; *Southerin* v. *Mendum*, 5 N. H. 420, 425 ; *Strickland* v. *Kirk, ubi supra.* The interest of the mortgagee is a chattel, and is devolved on the holder of the note passed by delivery or indorsement.

But there are differences between the mortgagee and *cestui que trust*, growing out of the structure of the instruments under which their respective rights accrue, important to be

noted in considering this question. The points of agreement are, that both are creditors and have securities for their debts. But the mortgagee, after condition broken, becomes owner of the estate, is invested with the legal title, and may, at law, have a certain redress predicated of his legal right. But the *cestui que trust* in no contingency takes the title that is outstanding in the trustee, to be dealt with as declared by the grantor, to accomplish the trust dependent on it. Ordinarily, the trust is to sell the land, and pay the creditor. In addition to the power of sale, Mangum, in this case, was directed to take possession of the property.

It would follow, therefore, that a power conferred on the *cestui que trust* cannot, in the nature of things, be a dependency of the title, but must be personal or in gross. It is a confidence reposed in the *cestui que trust*, which he cannot delegate to another, unless thereto authorized by the donor.

Our conclusion is, that Harrison & McLaren, before their bankruptcy, could not have transferred the debt and the trust security, by deed or otherwise, with all the rights and powers which it conferred on them, so as to have vested in the purchaser from them the power to appoint a new trustee. That right can only be communicated to an assignee of the *cestui que trust*, where the donor has expressly stipulated that the assignee shall also have the power. In that case, any one who becomes the owner and holder of the debt, and the trust security as its incident, is assignee of the power, and would be authorized by the donor to execute it.

It remains to consider, whether, by operation of the bankrupt law, and the conveyance of the bankrupts pursuant to it, the power could or did vest in the trustees.

The forty-third section of the bankrupt law is to the effect that the bankrupt shall convey, transfer and deliver all the property and estate of the bankrupt to the trustees, who shall hold the same in the same manner and with the same powers in all respects as the bankrupt would have held the same, if no proceedings in bankruptcy had been taken. The purpose ot the conveyance is to place the property and estate in the trustees, so that they, may be administered for the creditors. It has, therefore, been uniformly held, that unless

property or estate is beneficially in the bankrupt, so that it may be applied for the creditors, it does not pass; that property, which may be held by the bankrupt purely in trust for another, does not go to the trustee. The trustees take property, or rights or interests in or to property, choses in action, &c., precisely as the bankrupt was owner, or had interest in the same, but only such as may be valuable to or made available for creditors.

Whatever interest Harrison & McLaren owned in the debt of Clark, or in the property pledged as security, vested in the trustees. What were they?

The supposition must not be indulged that the bankrupt law proposes or intends that the bankrupt shall assign more or greater interests or rights of property, or appendages to it, than he had, or than were capable of assignment. If he was a mortgagee, he complies with the law when he delivers up the evidences of indebtedness; if he is *cestui que trust*, or creditor protected by the ordinary trust deed, all that he can transfer to the trustees is the note or bond. In each instance the securities, as incidents and appendages of the debt, pass also.

But if the bankrupts were the donees of a power purely in personal trust and confidence, although in aid of a security, such power, not being in its nature assignable, does not vest in the trustees.

If, however, the power had been bestowed on Harrison & McLaren and assigns, the donor, Clark, would then have made it assignable, and it would have been communicated to the trustees by the conveyance of the bankrupts.

But because the trustees of the bankrupts' estate could not appoint a trustee in the place of Mangum, it by no means follows that they are without remedy. They have succeeded to all the rights of the bankrupts, to the deed of Clark, and the trust security. If they could not execute the trust through the original trustee, they had a plain and adequate remedy in the Chancery Court, either to have another trustee appointed to make the sale, or to have the trust executed by a foreclosure, decree, and sale.

The case of *Sargent* v. *Howe*, 21 Ill. 148, cited by counsel

for the appellees, supports these views.  There the trustee refused to execute the trust at the instance of the assignee of the notes, who brought his plaint in chancery for relief. The reasoning was to show that the court could afford relief. It was to the effect that the assignment of the notes carried the security, to " the same extent and in the same condition it was held by the payee."  In defining with more particularity what these rights were, it was said " that the lien, which the payee held in the property, passed by the assignment ; the assignee succeeded to the equitable rights of the assignor in the trust property to the same extent he held it as a security."  Therefore, as the court had ample jurisdiction over trusts and trustees, it could compel the recusant trustee to do his duty or could remove him and appoint another.

Precisely that course was open to the appellees as holders of Clark's indebtedness.  They could have complained to the Chancellor that Mangum would not execute the trust, and, by reason of their equitable interest in the trust property, they could have asked that the court would either remove him and appoint a new trustee, or, through its own master or commissioner, make sale of the property.

The trustees of the bankrupts' estate assumed to exercise a power which they did not have, in appointing trustees in the stead of Mangum.  The sale made by the trustees was invalid and ineffectual to pass the trust property to Wilson, the purchaser, who, therefore, had no right to vex Clark with a suit to recover the possession.

But there was also controversy between the trustees of the bankrupts' estate and Clark as to the real balance due from him.  It is necessary that such balance should be ascertained in order to determine the sum for which the trust property should stand as security.

In order to determine that question, and conclude finally the litigation between the parties, the decree will be reversed and cause remanded.