**WEST LUMBER CO. v. HENDERSON et al.***
(No. 765.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 25, 1922. Rehearing Denied March 8, 1922.)

1. **Executors and administrators** ⟐⟐368—**Evidence held to support finding of payment of note for purchase of lands.**

A finding that plaintiff, who purchased lands from administrators in 1877, had paid the note given for the price, is supported by evidence that the administrators thereafter reported a payment on the note and secured orders for sale of other tracts of land to pay debts without attempting to collect the note, though it was secured by two sureties, as well as by mortgage on the lands purchased, notwithstanding the fact that the note, without any credits thereon, was a long time thereafter found in the safe of the attorney for the administrators.

2. **Evidence** ⟐⟐313—**Declaration of plaintiff who had been in an insane asylum held not to show nonpayment of note.**

A statement by plaintiff out of court that he had no recollection of having bought the land in controversy, and that he did not pay for it, is not sufficient to establish nonpayment of the note given for the purchase price, where the record of the probate court showed he did purchase the land, with other lands, from administrators, and plaintiff had been confined in an insane asylum for more than 25 years since the purchase of the property and had no clearer recollection as to the purchase of the other tracts, which was not questioned.

3. **Executors and administrators** ⟐⟐386—**Rescission of administrators' sale by heirs held not shown.**

A partition by the heirs of decedent of the property undisposed of during administration, the description of which would include not only the land in controversy, which had been sold to plaintiff by the administrators, but also two other tracts subsequently sold to others which, the administrators reported, disposed of all the land in that tract, which partition was apparently based upon the inventory of the land in that tract stating an amount exceeding its actual acreage, does not show that the heirs rescinded the administrators' sale to plaintiff for nonpayment by him of the purchase-money note.

4. **Vendor and purchaser** ⟐⟐101—**Notice of intention to rescind is necessary after waiver of payment on due date.**

Where the vendor fails to exercise his right to rescind the contract of sale for vendor's failure to perform upon the date of maturity or within a reasonable time thereafter, he cannot subsequently rescind the contract without giving to the purchaser reasonable notice of his intention to do so, and an attempted rescission without such notice cannot be sustained, especially where the purchaser offered to pay into court the balance due on the purchase price, if any, as he had a right to do under Vernon's Sayles' Ann. Civ. St. 1914, art. 3353.

5. **Vendor and purchaser** ⟐⟐95(1)—**Delay in rescission waives right.**

The right of a vendor to rescind the contract of sale must be clearly, unequivocally, and promptly acted upon, and, if he delays for an unreasonable time after learning facts that would entitle him to rescind, he is deemed to have waived his right by lack of diligence.

6. **Executors and administrators** ⟐⟐368 — **Facts held to show payment applied on all land purchased.**

Where plaintiff had purchased from administrators several tracts of land at one sale and by one contract and gave a note for the balance due on the purchase price for all tracts, and thereafter the administrators reported a payment by him on the note, the facts do not sustain the contention that the payment so made was intended as a payment in full for some of the tracts purchased, leaving the tract in controversy unpaid for.

7. **Judgment** ⟐⟐253(2)—**Prayer for value of timber cut and for general relief supports allowance of interest.**

In trespass to try title, a prayer that plaintiff recover the value of the timber cut from the land in controversy, and for such other relief as he might be entitled to, supports a judgment allowing interest on the value of the timber cut from the institution of the suit, where such value, with interest, was less than the sum claimed by plaintiff.

8. **Evidence** ⟐⟐67(2)—**Presumed to remain insane until discharged from asylum.**

When a person has been adjudged insane and committed to the insane asylum, he is presumed to continue insane until discharged from the asylum, and the burden was upon one offering in evidence a statement made before such discharge to show that at the time the state-

⟐⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 19, 1922.

ment was made he had regained his mental faculties.

**9. Appeal and error ⬅992—Whether inmate of asylum had recovered faculties when he made statement is for the trial court.**

The question whether one who had been committed to an insane asylum and not yet discharged had recovered his mental faculties when he made a statement offered in evidence against him was one of fact for the trial court to determine.

**10. Appeal and error ⬅1058(3)—Exclusion of declarations held harmless in view of evidence of similar declarations.**

The exclusion from evidence of statements made by plaintiff before his discharge from the asylum was not prejudicial to defendant, where another witness was permitted to testify that after his discharge from the asylum plaintiff made substantially the same statements as those excluded.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by F. B. Henderson, as guardian of Tom Moore, alleged to be non compos mentis, against the West Lumber Company, in which the alleged incompetent intervened as plaintiff after he was adjudged to have recovered his sanity. Judgment for the plaintiffs, and defendant appeals. Affirmed.

Feagin, German & Feagin, of Livingston, and Baker, Botts, Parker & Garwood, or Houston, for appellant.

W. D. Gordon, Thos. J. Baten, and O. S. Parker, all of Beaumont, for appellees.

O'QUINN, J. F. B. Henderson, as guardian of Tom Moore, who was alleged to be non compos mentis, filed this suit in the district court of Polk county, Tex., May 14, 1915, against the West Lumber Company in trespass to try title for 117 acres of land known as block 36 of the J. S. Garner league in Polk county, and being a subdivision of the estate of A. P. Garner, deceased, and for damages on account of timber cut by defendant on said land. Pending this suit, Moore was adjudged to have recovered his sanity, and on July 4, 1918, he intervened as plaintiff, and on trial judgment was awarded him for the land and for damages for the value of the timber cut therefrom, with 6 per cent. interest from the date of the filing of the suit for its cutting in 1915.

The defendant answered by general demurrer, general denial, plea of not guilty, and specially pleaded that plaintiff claimed the land by virtue of an executory contract of sale dated July 20, 1877, between the heirs of A. P. Garner and plaintiff, Tom Moore, in which the superior title to the land was retained in the Garner estate to secure the purchase money; that the purchase money for said land had never been paid by said Moore

or any one for him, and hence plaintiff had no title to said land; that after said executory contract, Moore having failed to pay the purchase money, the estate of said A. P. Garner and the heirs entitled to same rescinded said executory contract, conveyed said land to A. B. Garner and Inez Garner, two of said heirs, and by legal conveyances said land had passed to defendant, and that by reason of said rescission and conveyances thereunder defendant was the owner of the land.

To defendant's answer, plaintiff replied by supplemental petition, and denied the matters therein contained, averred that plaintiff had fully paid the note given for the purchase money for said property, and, in the alternative, that if mistaken as to the payment of said note or any part of same then plaintiff offered to do and perform all such acts and things as in law or equity he should do, and to pay into court such sum as the court might find due.

The case was tried before the court without a jury. Plaintiff recovered judgment for the land and for 1,342,213 feet of timber, at $3.50 per thousand, with interest at the rate of 6 per cent. on said amount from May 15, 1915, to date of trial, totaling the sum of $6,406.95, with interest thereon from date of judgment, and costs of suit; from which defendant has appealed.

Both parties claimed title to the land involved through the common source of the estate of A. P. Garner, deceased. No question is raised as to the amount of the judgment, except the contention that the pleadings of plaintiff do not support the award of interest on the judgment for timber cut.

The record discloses that A. P. Garner died prior to 1877, and that during the year 1877, and afterwards, administration of his estate was pending in the probate court of Polk county, Tex., and that W. H. Garner and F. T. Garner were the administrators; that in accordance with an order of sale granted by the court, said administrators on July 3, 1877, sold numerous portions of the land belonging to the estate of said A. P. Garner, and among them was block 36 of the J. S. Garner league, containing 117 acres, to Tom Moore, and at the same time one house and lot in the town of Livingston and 49¼ blocks of land in the old town of Swartwout were sold to said Moore, the whole for the consideration of $260.70, which sale was duly reported to the court, and by the court approved, and deed to said property duly made to said Tom Moore by said administrators July 20, 1877; that in accordance with the terms of sale, Moore duly executed his note payable to said administrators for said sum, to wit, $260.70, with H. E. Moore and John F. Carr signing same as sureties, and also executed and delivered to said adminis-

trators a mortgage on all of said property to secure the payment of said note.

[1] The main, and we think the decisive, question in the case, is: Did Tom Moore pay for the land, and, if not, was there a rescission of the conveyance to him? The court found as a fact that the note had been fully paid off and discharged. We think said finding is supported by the record. There is no question as to the legality and regularity of the sale and conveyance to Moore. The note in question was produced on the trial, and it had no credits noted upon it. It was found among the papers left in an old safe by Judge Crosson, who was attorney for the administrators, after he had left Livingston, Polk county, some time in the year 1891. How it came to be there, or how long it had been there, or for what purpose it was placed there, is not shown by the record; but it appearing that Judge Crosson was the attorney for the administrators, preparing their papers for them and counseling them in the discharge of their duties, we think it is to be presumed that he had the probate papers in his office for the purpose of preparing such papers as were necessary for the administrators to make and have, and that it was left in the safe, perhaps entirely forgotten. Appellant contends that as it bore no credits nor in any manner evidenced any payment on it, it shows want of payment. We think the record abundantly disproves this contention. The administrators reported that the land was sold to Tom Moore on July 3, 1877, which said sale was by the court confirmed and deed duly executed to Moore on July 20, 1877, and placed of record. Several times thereafter the administrators, reporting on the condition of the estate, reported the land as sold to Moore, and never reported any failure of Moore to meet his obligation as to same; but, on the contrary, on March 29, 1881, in a sworn report they reported the sum of $122.62 paid by Moore on his note as of date December 15, 1879. This was admittedly paid, but it nowhere showed as credited on the note, and as the note was well secured, both by personal sureties and by mortgage on the whole of the property sold to him, and as there was never any report showing lack of collection, and no resort to a foreclosure of the mortgage, it may be safely presumed that the balance was paid, and that the note not being in the hands of the administrators, but stowed away in counsel's safe, accounts for the lack of credits appearing on the note. Weems v. Masterson, 80 Tex. 56, 15 S. W. 590; Hume v. Le Compte (Tex. Civ. App.) 142 S. W. 935. There is no contention but that the note was entirely and easily collectable, and also that the estate was in debt, as shown by numorous and repeated applications made by the administrators for orders of sale to pay debts, long after this sale to Moore, and after the receipt of the $122.62, and as the administrators are presumed to, and doubtless did, act entirely for the best interest of the estate in their charge, if the note had not been paid, they would have proceeded to collect same.

[2] Appellant further insists that the note was not paid, because Moore, in his talk with Freeman, said that he had no recollection of having bought the land and that he did not pay for it. In considering the weight to be given to the statements of Moore made to Freeman, it should be remembered that Moore, some time after he purchased the property, was adjudged insane; that he was confined in an insane asylum for about 25 years; that at the time of the conversation with Freeman he (Moore) was some 65 years old, more than one-third of which time had been spent in the asylum; that it had been slightly more than 41 years since he bought the land, the last half of which he spent in the asylum; that his recollection was faulty as to the other items bought at the same time, he thinking and saying that he bought the land and house in Livingston for H. E. Moore, his mother, and that the deed was made directly to her, which the record shows to have been made to him; that he bought the Swartwout lots for F. T. Garner, and the record shows the very next day after receiving a deed to them, he deeded them to A. M. Garner. In fact, he did not seem to have a very accurate recollection of any part of the proceedings, and we do not think the hazy recollection of a man who has just emerged from a quarter of a century's confinement in the insane asylum should or could seriously be contended as of better verity than the solemn records of a court of competent jurisdiction and of public records made contemporaneously with the transaction.

The further presumption could also be indulged, if necessary, as supported by the facts, that as the proof shows Moore did buy the lot and house in Livingston for his mother, H. E. Moore, that he also bought the 117 acres of land for her, but that title never passed to her for want of deed from him. The record shows H. E. Moore rendered the land for taxes the next two years after its purchase, and the record does not disclose that after the sale to Moore any other person ever rendered this identical land for taxes.

[3] But appellant insists that Moore did not pay for the land, and that the Garner estate and the heirs entitled to same rescinded the executory contract made with Moore, and partitioned the land among the heirs, A. B. Garner and Inez Garner receiving that portion which it is contended included this 117 acres, by partition deed dated September 28, 1899, and that same then proceeded, by regular chain of title to the defendant. The partition deed did not specifically name

any portion of the J. S. Garner land, other than 275 acres described by metes and bounds out of the northeast corner of said tract, and that out of a tract of 845 acres which was claimed to be remaining after all sales of same. The J. S. Garner tract was inventoried at 3,608 acres in the beginning of the administration. The administrators, after selling 2,555 acres, reported that only 234 acres remained unsold; that the tract was inventoried at 3,608 acres, but that same fell short. The report did not say how much the tract fell short, but by taking the amount reported sold, 2,555 acres, and adding the remaining 234 acres, makes 2,789 acres which from 3,608 acres leaves 819 acres short. The administrators, after reporting that all of the H. S. Garner tract had been sold but 234 acres, reported that on the first Tuesday in November, 1887, they had sold the said 234 acres, being lot 21 of 117 acres to John Tackaberry, and lot 37 of 117 acres to C. R. Miller, thus closing out the whole of the J. S. Garner tract. This was more than ten years after the sale to Moore, and during all this time, and in the many reports made by the administrators as to said lands, nothing appears to show failure on Moore's part to pay the purchase money, or procedure by the administrators to either collect same or rescind the contract. The very first we find after this of any J. S. Garner land is on September 28, 1899, when the heirs are attempting to divide the remaining assets of the estate among themselves, and it is stated that there are remaining of the J. S. Garner tract 845 acres, which would make more than the tract originally inventoried, and this, too, in the face of the fact that the administrators, years before, had reported the tract short 819 acres, and also that all of said tract had been sold and said administrators, time after time, carrying in their reports the sale to Moore of this 117 acres, and in one instance showing the receipt of $122.62 payment on the note. We do not believe that the record indicates that any rescission was ever contemplated, or that rescission was intended or attempted by the partition deed which forms the basis of appellant's contention for rescission. The record nowhere contains one word that the heirs or administrators ever understood or believed that in partitioning the estate among themselves they intended to rescind the sale to Moore; but, to the contrary, we think it plainly indicates that the heirs, after the administrators had reported the debts paid, were simply attempting to divide the remainder of the estate among themselves, basing it upon the original inventory, not making any effort to find whether a shortage existed in said tract of land, or, if any part remained, where it was located. We are strengthened in this view by the fact that on November 7, 1887, the very last sale made on the J. S. Garner tract and which the administrators said closed out that tract was made of lot 21, containing 117 acres, to John Tackaberry, and lot 37, containing 117 acres, to C. R. Miller. By viewing the sketch attached to the statement of facts, it shows that lot 21 is in the very northeast corner of the tract, that lot 36 is just south of lot 21, and that lot 37 is just south of lot 36, and that the 275 acres included in the partition deed to A. B. Garner and Inez Garner, made the basis of the rescission contention by appellant, includes the whole of lot 36 and lot 21 and 41 acres of lot 37, about which latter two there is no contention of nonpayment of purchase money, and if that deed was intended to rescind the Moore purchase, it also rescinded John Tackaberry's lot 21 and 41 acres of C. R. Miller's lot 37. These facts raise an issue against rescission, and, the court having so found, his finding must be sustained. It therefore follows that in our opinion there was no intended or attempted rescission in making said deed, but that the heirs were simply trying to divide a supposed remainder of the tract.

[4] Again, even if it was intended to rescind the sale in the manner, at the time, and by the parties as contended, it could not be so done, for if there was a balance of the consideration unpaid, there does not appear to have ever been any demand for payment, notwithstanding the same persons for many years were administrators of the estate, in possession of all information as to the matter, and repeatedly making reports to the court as to the status of the estate, and their long waiver of payments indicated, either that the purchase money had been paid, or that no forfeiture of the contract on account of this default would be claimed, nor was any notice ever given to Moore that the administrators or the heirs would insist upon a rescission of the sale for nonpayment of the balance of the purchase price of the property. This would have to be done if they proposed to cancel the contract of sale otherwise than by a resort to proceedings in court. Tom v. Wollhoefer, 61 Tex. 277; Reddin v. Smith, 65 Tex. 26; Canon v. Scott (Tex. Civ. App.) 230 S. W. 1047; Walls et al. v. Cruse et al. (Tex. Com. App.) 235 S. W. 199.

[5] Where contracts provide for performance by a certain time and the vendor waives his rights upon the failure of the vendee to pay at the agreed time, he cannot subsequently rescind the contract without giving reasonable notice of his intention to do so. 29 A. & E. Enc. of Law (2d Ed.) 672; Reddin v. Smith, 65 Tex. 26. The right to rescind must be clearly, unequivocally, and promptly acted upon, and if the injured party delays for an unreasonable length of time after learning facts that would entitle him to rescind, he is deemed to have waived his right by lack of diligence. Tom v. Wollhoe-

fer, 61 Tex. 277;. Watson v. Baker, 71 Tex. 739, 9 S. W. 867; Culberson v. Blanchard, 79 Tex. 486, 15 S. W. 700; Weem v. Masterson, 80 Tex. 45, 15 S. W. 590. After waiving time as an essential feature in the original contract, they could not deprive appellee of the benefit of the contract, without giving him an opportunity to make the payment, the time for which they had indefinitely postponed by their own acts. Reddin's Heirs v. Smith, 65 Tex. 26. More than a reasonable time had elapsed for the payment of the purchase money, and its prompt payment had been waived. If they had sued for the land, appellee would have had the right to pay the balance of the purchase money and defeat the action. They brought no suit, and gave no notice of their purpose to rescind. This was a recognition of appellee's right to the land upon payment of the purchase money, and they had no right to a rescission of the contract without giving Moore notice of their purpose to require the purchase money to be paid within some reasonable time; besides, the appellee offered, in the event the court found that the balance of the purchase money had not been paid, to pay same into court. This he had the right to do, no matter how long he may have been in default. Article 3353, Vernon's Sayles' Civil Statutes; Wigmore on Evidence, § 159; Tom v. Wollhoefer, 61 Tex. 281; Kauffman & Runge v. Brown, 83 Tex. 47, 18 S. W. 425; Morris v. Duncan (Tex. Civ. App.) 25 S. W. 48; Milwee v. Phelps, 53 Tex. Civ. App. 195, 115 S. W. 894; Dillingham v. Kerr (Tex. Civ. App.) 139 S. W. 911.

[6] Appellant contends that the payment of the $122.62 was not made on the 117 acres of the J. S. Garner land, but that same was applied either to the payment on the house and lot in Livingston or to the Swartwout lots. They try in several ways to figure out that such was the case, but we do not believe such inference is deducible from the facts, but that, to the contrary, the undisputed evidence shows that the payment was made "on the Tom Moore note," as reported by the administrators, and that such payment was applied to the whole note. Appellant contends that the contract was severable, and that the payment having applied, as they contend, to the house and lot in Livingston for Mrs. H. E. Moore, mother of Tom, that there was no attempt on the part of Tom to comply with the contract as to the 117 acres, and that on the authority of Kennedy v. Embry, 72 Tex. 389, 10 S. W. 88, the heirs of Garner could rescind without notice to Moore. We cannot agree to this contention, either as a matter of law or of fact. The sale was embodied in one instrument, and the consideration therefor in one note, and the payment as shown by the administrator's report, was on the note as a whole. There can be no rescission by piecemeal. The rescission must be as to the whole con-tract, if at all. We do not think the facts of this bring it within the rule laid down in Kennedy v. Embry. There the vendee entered into an executory contract, and without paying any part of the purchase money, left the state before his time for performance expired, and remained absent until the trial of the case, more than five years after the time for performance had elapsed, without indicating any intention to perform the contract. Here we have, admittedly, part payment and rendering for taxes after the date for payment had elapsed, and the vendee's whereabouts was well known to the vendors or the heirs. Besides, Kennedy v. Embry holds that, where there has been part performance by the vendee, he would be entitled to notice of the intention to rescind. In reviewing the cases of Kennedy v. Embry, supra, and Thompson v. Westbrook, 56 Tex. 267, Chief Justice Stayton, in Huffman v. Mulkey, 78 Tex. 561, 14 S. W. 1031, 22 Am. St. Rep. 71, said:

"In these cases the facts existed which entitled the vendors to rescind, but the cases push the application of the rules growing out of the holding that such contracts are executory in character to the utmost verge of propriety or reason; and the writer doubts the correctness of the holding even in such cases that rescission can, in any case in which a deed has passed, be made otherwise than by a writing or some decree of proper tribunal, if for no other reason, because it makes title to land to rest largely in parol, when the purpose of the statutes of fraud was to require such right to be evidenced in a different manner."

[7] Appellant also complains that the court erred in allowing appellee to recover interest on the value of the timber cut from May 15, 1915, to the date of judgment, asserting interest was not sued for by plaintiff, and that there was no prayer for interest in his petition. Appellant admits that this is a case in which interest could have been awarded as a part of the damages, if proper allegations had been made and prayer therefor had been contained in the petition, but says that such is not the case. If, under the pleadings, evidence, and findings of the court, plaintiff was entitled to recover the value of the timber as damages for the wrongful appropriation of it by defendant, then we can perceive no valid reason why interest should not be allowed as a part of such damages from the date of such wrongful appropriation. Appellee alleged his damages (for stumpage) at $10,025. His judgment was for a less sum, to wit, $6,406.96, which was for the stumpage value of the timber shown to have been cut, and interest thereon at 6 per cent. per annum from May 15, 1915, the date of the cutting, to the date of judgment, a much less sum than prayed for. Plaintiff's prayer for relief was:

"Wherefore, intervener prays that in the event that the court should determine that his

guardian, F. B. Henderson, should not prosecute this suit, that on the trial hereof the intervener have judgment against the defendant for the title and possession of said land hereinbefore described, and for damages for the manufactured value of the timber cut and removed from the said land in the sum of $26,-060, or in the alternative, if the intervener is denied recovery for the manufactured value, that he have judgment over and against the defendant for the sum of $10,025, or such other sum, in either event, as the facts may show him entitled to. Intervener prays for such other relief, special and general, in law and in equity, to which he may be entitled, and for costs of suit." S. & A. P. Ry. v. Addison, 96 Tex. 61, 70 S. W. 200; Southern Gas & Gasoline Co. v. Adams et al. (Tex. Com. App.) 227 S. W. 945.

The appellee alleged and the proof showed facts that would entitle him to interest as damages for the conversion of his property, and we think the prayer was sufficient to include the actual damages and also all other relief arising out of the facts pleaded.

[8-10] Appellant's fourth proposition is that the court erred in refusing to permit the witness J. C. Feagin to testify with reference to the statement made to him by plaintiff, Tom Moore, in April, 1916, with reference to the purchase of the land in controversy, and with reference to the payment by him of the note executed for the purchase money; the objection to said testimony being that the said Tom Moore was adjudged insane January 16, 1892, and was not discharged as cured until December 2, 1916, the presumption of law being that at the time said statement was made, said Moore was incompetent to testify. The record shows that Tom Moore was adjudged insane January 16, 1892, and discharged from the asylum as cured December 2, 1916, and that a judgment of sanity was had December 22, 1916. The rule is well established that when one has been adjudged insane and committed to the insane asylum he continues to be insane until discharged. 22 Cyc. 1115; 14 R. C. L. 622. The burden was upon defendant to show that at the time Tom Moore made the statement, he had regained and was then in possession of his mental faculties. 22 Cyc. 1115; 14 R. C. L. 622; Elston v. Jasper, 45 Tex. 409; Herndon v. Vick, 18 Tex. Civ. App. 583, 45 S. W. 852. The question as to whether Moore had recovered his mental faculties at the time he was talking to the witness Feagin was one of fact for the trial court to determine, and after hearing such proof as was offered by the defendant, the court found against the admissibility of the evidence, and we cannot say that he erred in his finding. National Surety Co. v. Landers (Tex. Civ. App.) 235 S. W. 276. Furthermore, if such ruling of the court had been error, it was harmless, for the witness Freeman was permitted to testify to a conversation had with Moore after Moore was dis-charged and determined to be of sound mind, and he testified to practically the same statements as were proposed to be proven by Feagin, which testimony of Freeman was in no wise disputed, and such proposed testimony being only cumulative of Freeman's, its exclusion, if error, was not reversible error. Moore v. Anderson, 30 Tex. 228.

Finding no error in the record, the judgment is affirmed.

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

