## PEPPER et al. v. CONTINENTAL STATE BANK OF BIG SANDY et al.
### No. 4313.

Court of Civil Appeals of Texas. Texarkana.

May 25, 1933.

Rehearing Denied June 15, 1933.

Campbell, Lee, Taylor & Leak, of Longview, and Wm. Hodges, of Texarkana, for appellants, D. G. Pepper, Margaret E. Pepper, and J. T. Eggleston.

Wm. G. Davisson, of Ardmore, for appellants U. S. Joines, Charles Anderson, and Abe Kaufman.

Phillips, Trammell, Chizum, Price & Estes and Cecil N. Cook, all of Fort Worth, for appellee Continental State Bank of Big Sandy, Tex.

Victor C. Mieher, of Tulsa, Okl., James & Conner, of Fort Worth, and Bramlette & Meredith and T. B. Stinchcomb, all of Longview, for appellee Amerada Petroleum Corporation.

JOHNSON, Chief Justice.

The Continental State Bank of Big Sandy, Tex., hereafter referred to as plaintiff bank, sued D. G. Pepper and wife, Margaret E. Pepper, and J. T. Eggleston in the district court of Gregg county in trespass to try title and to remove cloud from title to 100 acres of land in Gregg county. U. S. Joins, Charles Anderson, and Abe Kaufman intervened, claiming the leasehold mineral interests in the land, except ten acres in the extreme southwest corner. These interveners claimed to be innocent purchasers for value under a lease executed by D. G. Pepper and wife to J. T. Eggleston on March 16, 1931, and by Eggleston assigned to these interveners. The Amerada Petroleum Corporation also intervened, claiming the leasehold mineral interests under a lease executed to it by the plaintiff bank on March 21, 1931, and that it was an innocent purchaser for value. The defendants D. G. Pepper and wife and J. T. Eggleston answered by pleas of not guilty, and specially pleaded that on March 16, 1931, Pepper and wife executed to Eggleston the oil and gas lease which Eggleston had assigned to Joins, Anderson, and Kaufman, and that in addition thereto, Pepper and wife had on March 27, 1931, conveyed to Eggleston a one-half interest in the (one-eighth royalty) remaining minerals in and under the land. Upon findings of the jury judgment was rendered in favor of plaintiff bank and intervener Amerada Petroleum Corporation, from which defendants Pepper and Eggleston and interveners Joins, Anderson, and Kaufman have appealed.

It appears that on May 15, 1926, the plaintiff bank conveyed the land now in controversy to D. G. Pepper for recited consideration of $3,245 paid and secured to be paid by D. G. Pepper as follows: $205 cash, and one promissory vendor's lien note for $1,640 payable to the bank in eight equal installments, due, one on each following November 15th until all matured; and the assumption of the payment by D. G. Pepper of a $1,400 note, which $1,400 note had been executed by W. H. Hamilton and wife, May Hamilton, to J. W. Bartlett on the 22d day of February, 1919, and due on the 1st day of March, 1926, and which was secured by a deed of trust lien executed by W. H. Hamilton and wife, May Hamilton, to J. F. Bartlett, trustee, covering the land in controversy, and which deed of trust constituted a first and superior lien on the land. This $1,400 note and deed of trust lien was then owned by W. L. Perdue, who was at that time a cashier of the plaintiff bank.

Thereafter, on June 17, 1926, W. L. Perdue transferred to the Federal Land Bank of Houston, Tex., $950 of this $1,400 Hamilton note and deed of trust lien securing the payment thereof, which assignment recited a transfer to the Federal Land Bank of "all and singular, all liens, superior title, rights, equities and interests in and to said land now owned and held by grantor to secure the payment of said indebtedness." This assignment further provides that the portion of the indebtedness so assigned together with the lien securing the same should be and remain a first and superior lien to the remainder of the debt held by the grantor. On July 6, 1926, W. L. Perdue assigned the remaining $450 of this Hamilton note to the plaintiff bank. The Federal Land Bank, on the date of their purchase of the $950 of the Hamilton note and deed of trust lien, took a renewal thereof from D. G. Pepper and wife, including $50 stock in the bank, making a total of $1,000 on the amortization plan of sixty-nine semiannual payments, and a new deed of trust; but in this new deed of trust the Federal Land Bank did not waive any of its "rights, title, liens, equities and remedies" owned and held by it under the Hamilton deed of trust, but therein expressly reserved them.

On January 10, 1928, it appears that W. L. Perdue, in good faith, but without an agreement with or any formal order of the board of directors of the plaintiff bank, took the $450 Hamilton deed of trust note out of the assets of the plaintiff bank and placed in lieu thereof his personal note for a like amount. W. L. Perdue then undertook in his own name to cause the $450 indebtedness and interest thereon, the payment of which had been defaulted by Pepper, to be foreclosed under the Hamilton deed of trust. W. L. Perdue thereupon made demand upon J. F. Bartlett, trustee, to foreclose the Hamilton deed of trust in satisfaction of the $450. Bartlett refused to act and resigned. W. L. Perdue then appointed one B. C. Todd as substitute trustee and made demand upon him to foreclose. B. C. Todd, pursuant to the demand, caused notices to be posted, and on April 3, 1928, made public sale of the land to the plaintiff bank for $150, and executed to the bank a deed signed by B. C. Todd as substitute trustee. It appears that the Federal Land Bank did not know of this foreclosure until after the present suit was filed, and did not consent to or participate in the foreclosure, though it was and continued to be the owner and holder of $950 of the Hamilton note and deed of trust lien securing the payment thereof.

On the trial of this case the plaintiff bank and the Amerada Petroleum Corporation holding under it claimed title upon two grounds: (1) Under the deed from B. C. Todd, substitute trustee; and (2) that the bank had rescinded its executory conveyance to D. G. Pepper by reason of his default in the payment of the installment notes executed to the bank. As to appellees' claim of title under the substitute trustee's deed, appellants contend: First, that W. L. Perdue's

acts in taking the Hamilton remaining $450 note out of the bank and substituting his personal note for a like amount was in violation of article 499, Vernon's Annotated Texas Civil Statutes, and vested no title in him, and not being a holder of the debt, or any part thereof, he had no authority to invoke the power of sale under the deed of trust, and his attempt to appoint B. C. Todd as substitute trustee and effect a sale thereunder was void, hence the bank received no title by reason of his substitute trustee's deed. Second, that should it be held that W. L. Perdue was the owner of the remaining $450 of the Hamilton note at the time of the foreclosure, that he had no authority to appoint a substitute trustee or to invoke the power of sale under the deed of trust, in that the stipulations expressed in his written transfer of the $950 and lien to the Federal Land Bank he had thereby assigned "all and singular all liens, superior title, right, equities and interest in and to said land now owned or held by grantor to secure the payment of said indebtedness," thereby divesting himself of all the lien and rights thereunder, hence the plaintiff bank received no title by the substitute trustee's deed. Third, that should it be held that W. L. Perdue was the owner of remaining $450 of the Hamilton note, and should it further be held that he had not by the assignment transferred all his interest in the lien, that he had by such assignment transferred to the Federal Land Bank an equal, if not superior, interest in said deed of trust lien and all rights and powers therein provided; and that the Federal Land Bank as owner and holder of a part of the indebtedness and equal, if not superior, rights under the deed of trust, should have joined in and consented to the appointment of a substitute trustee and foreclosure proceedings; and that W. L. Perdue's appointment of B. C. Todd as substitute trustee, without the knowledge and consent of the Federal Land Bank was void, and the trustee's deed conveyed no title.

Regarding appellees' claim of title by rescission, appellants contend: (1) That the plaintiff bank not being the owner of all the purchase price indebtedness due by Pepper, it was not in a position to place him in status quo, and therefore did not have the power to rescind the conveyance executed to him; (2) that having continuously claimed title under the substitute trustee's deed from and after the foreclosure thereof, and all of its acts relating thereto being in conformity with such claim of title under the foreclosure, and having subsequent to the foreclosure and especially by its letter of August 10, 1929, to Pepper, continued its efforts to collect from Pepper the balance due on the $450 Hamilton note and its $1,640 installment note, and having on November 19, 1931, purchased from Pepper his interest in the property and accepted his warranty deed paying him therefor a consideration of $13,000, the plaintiff bank by all and singular of said acts elected to and did affirm its conveyance to Pepper, and could not by reason thereof claim title by rescission; and (3) that the plaintiff bank, by having subsequent to default accepted partial payment and continued in its effort to collect the debt from Pepper, had waived time as of the essence of the contract, and that it could not thereafter declare a forfeiture and rescind the conveyance which it had made to him without having first notified Pepper of its intention to do so and give him a reasonable time in which to perform.

Appellants have made other assignments not here stated, since we are of the opinion that appellees' title cannot be sustained for the reasons hereafter discussed and upon which the facts do not appear controverted.

■ The Hamilton deed of trust by reason of its provisions relating thereto required all the holders of the indebtedness secured thereby to join in the appointment of a substitute trustee and in the request for him to foreclose, in order to invoke the power of sale under it; and W. L. Perdue's appointment and request, alone, and without the joinder, knowledge, or consent of the Federal Land Bank, co-owner of the debt and lien, did not empower B. C. Todd to act as substitute trustee, and the plaintiff bank received no title to the land by virtue of his deed. After the assignment thereof by W. L. Perdue to the Federal Land Bank, it remained the owner and holder of $950 of the Hamilton note and was vested with equal, if not superior, title, rights, and powers of the lien under the deed of trust, as was possessed by the owner and holder of the remaining $450 part of the indebtedness secured thereby. The Federal Land Bank was as much owner and holder of the indebtedness and lien under the deed of trust, at the time of the appointment of the substitute trustee and foreclosure by him at the suggestion of W. L. Perdue, as was the owner and holder of the remaining $450. After the assignment, each creditor was owner of a *part, only,* of the indebtedness and lien securing its payment, and the deed of trust does not provide that the owner and holder of a *part* of the indebtedness secured by the lien can, alone, appoint a substitute trustee, and it does not provide that the trustee or substitute trustee is empowered to sell the land upon the *request* of the holder or holders of a *part only* of the indebtedness secured by the lien. The provisions referred to above of the Hamilton deed of trust stipulating who may appoint a substitute trustee, and upon whose request a trustee or substitute trustee is empowered to sell, are as follows:

"Should the trustee or any substitute appointed hereunder resign or fail or refuse, or

be unable to act hereunder, the payee or holder of said note shall have power to appoint as Trustee a substitute or successor, such appointment being evidenced by an instrument signed and acknowledged by the payee or holder of the note. * * *

"And said party of the first part hereby empowers the said trustee, or substitute or successor trustee, upon the request of the holder or holders of the indebtedness secured hereby, made at any time after default in the payment of such indebtedness, or after the breach of any covenant therein, to sell the above described property at public auction for cash, etc."

The language above quoted, it seems to us, would not permit of any construction other than to mean that when the debt secured by the lien is owned and held by two or more creditors, all such creditors must join in the appointment of the substitute trustee when the appointment of a substitute trustee is necessary, and all must join in the *request* for the exercise of the power of sale; and that such terms so stipulated by the makers of the deed of trust cannot by implication be construed to empower any *one* of such creditors, without the joinder, knowledge, or consent of the others, to appoint a substitute trustee and request him to act. In the case of Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070, 1071, it is said:

"The power to appoint a substitute trustee for the execution of the power of sale is not inherent in the cestui que trust. It is only through the express authority of the instrument that the power can be exerted. Jones on Mortgages, § 1774; Clark v. Wilson, 53 Miss. 119. It can be exercised only by those persons to whom it is expressly given, declares a recognized authority upon the subject. Hill on Trustees, p. 183*. * *

"The power of sale in a deed of trust is an important power. It is a method provided for the transferring of one man's property to another. The maker of the instrument has the right to impose upon its exercise such conditions as he deems necessary, and such limitations as he does impose must be strictly followed. It is a power which admits of no substitution and of no equivalent. Crosby v. Huston, 1 Tex. 203; Boone v. Miller, 86 Tex. 74, 23 S. W. 574; Perry on Trusts (3d Ed.) 602p."

■■ And a sale under a deed of trust by a substitute trustee not appointed by one authorized so to do under the terms thereof, does not divest the title out of the maker of the deed. Wilder v. Moren, 40 Tex. Civ. App. 393, 89 S. W. 1087; Wilson v. Armstrong (Tex. Civ. App.) 236 S. W. 755; Rawlings v. Lewis (Tex. Civ. App.) 191 S. W. 784. And a sale by a trustee or substitute trustee at the request of one not authorized so to do passes no title. Bowman v. Oakley

(Tex. Civ. App.) 212 S. W. 549; Austin v. Carter (Tex. Civ. App.) 296 S. W. 649; Hart v. Estelle (Tex. Civ. App.) 34 S.W.(2d) 665.

That the exercise of the power of sale by the trustee or the substitute trustee is limited by the provisions of the deed of trust under consideration to the request of the *holders* of the indebtedness secured, and cannot be invoked by the holder of a fractional part of such indebtedness, was determined by our Supreme Court in the case of Bomar v. West, 87 Tex. 299, 28 S. W. 519, 520, wherein the facts were not materially dissimilar from the case at bar, in that the secured indebtedness, evidenced by more than one note, was owned by different creditors, and in which the court said: "We are of opinion that the sale by the trustee did not pass title to the land. The limitation upon the power of the trustee to sell upon default in the payment of either of the notes at maturity is that he shall act upon the request of 'the *holder of the notes.*' The literal meaning of this language is that any person who was the lawful holder of *all* the notes at the time default was made in the payment of either of them should have the right to demand of the trustee that he make the sale. It may be that it should be construed to mean that the joint demand of all the holders of the notes would be sufficient to authorize the trustee to execute the trust upon default in the payment of either. But we are of opinion that it does not mean that, in case of a transfer of the several notes to different holders, any *one* of them has the right to demand a sale without the consent of the others. Such a construction is not beneficial either to the mortgagor or to the original holder of the notes. Now, the power of a trustee to make a sale in such a case can only be exercised when there has been a compliance with the *limitations* imposed by the terms of the grant. The deed in trust not having provided that a holder of any *one* of the notes should have the right to demand a sale, we conclude that the trustee acted without authority, and that his sale passed no title."

As to the plaintiff bank's power to rescind its sale to Pepper, it appears uncontroverted that the Federal Land Bank remained the owner of $950 of the purchase-money indebtedness which Pepper had obligated himself to pay as a part of purchase price of the deed from the plaintiff bank. The Federal Land Bank continued to hold Pepper liable for this indebtedness, and the plaintiff bank did not indemnify nor relieve Pepper of his obligation to pay this $950, until about November 12, 1931, when the plaintiff bank purchased the indebtedness from the Federal Land Bank, which was long after Pepper had conveyed the mineral interests to Eggleston, and Eggleston had made the assignment of the lease to Joins, Anderson, and Kaufman,

and it was after Pepper had offered to pay the plaintiff bank and it had refused to accept payment, and it was long after this suit was filed, and just before the trial in the lower court. Upon the acquisition of the $950 indebtedness by plaintiff bank from the Federal Land Bank, it tendered the note in court for cancellation, but the appellants had timely tendered payment of all the unpaid purchase money into court and which was by appellees refused.

 Not owning all the purchase-price notes, and not having indemnified or relieved Pepper of his promise and liability to pay that part due the Federal Land Bank, the plaintiff bank, if it had attempted to do so, did not have power to rescind its sale to Pepper. The power of rescission by the vendor, after the failure of the vendee to pay, depends upon the vendor's ability to substantially place the vendee in status quo. Pepper's promise and liability to pay the Federal Land Bank the $950 was as much a part of the purchase price as was the notes executed directly to the plaintiff bank. This $950 was at least a substantial portion of the whole of the purchase price. The legal principle involved is not different from that heretofore applied by our courts in the cases of White v. Bell (Tex. Civ. App.) 290 S. W. 849, 851; Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 489, 58 L. R. A. 699; and West Lumber Co. v. Henderson (Tex. Civ. App.) 238 S. W. 710, 714.

In White v. Bell, supra, it is held: "In order for the holder of a series of vendor's lien notes to be entitled to the legal remedy of rescinding the contract and recovering the land, he must own all of the series of notes at the time he seeks to rescind. If any of the series of notes are owned by other parties, then he does not have a legal right to rescind the contract, but has only the legal right to obtain judgment on the notes with a foreclosure of his lien."

In Douglass v. Blount, supra, it is said: "Douglass held the land under his purchase subject to the lien of the outstanding notes in the hands of Fortescue. While Fortescue held all of the notes, he had the right, upon the breach of the contract or the repudiation of it by the vendee, to claim the land, or to demand the money and foreclose the lien of the notes upon the land. * * * Having assigned one of the notes and a part of the lien to Swilley, the right to demand the money upon that note, and to foreclose and enforce the payment of it by the sale of the land, passed by the assignment. Whitehead v. Fisher, 64 Tex. 638. Certainly it could not be that Fortescue had the right to reclaim the land, and at the same time the assignee could demand the money."

And West Lbr. Co. v. Henderson (Tex. Civ.

App.) 238 S. W. 710, 714, is authority for the statement that there can be no rescission by piecemeal. The rescission must be as to the whole contract if at all.

We are of the opinion that the plaintiff bank did not regain title to the land by reason of the foreclosure by B. C. Todd, as substitute trustee, for the reason that the Federal Land Bank, owner and holder of a part of the indebtedness and lien, did not. join in or consent to his appointment and request for him to foreclose; and that the plaintiff bank did not regain title to the land under the theory of rescission, for the reason that the Federal Land Bank remained the owner of a considerable portion of the purchase-money indebtedness and lien securing the payment thereof and that plaintiff bank was not in a position to place Pepper in status quo, and had not indemnified him his liability to the Federal Land Bank; the plaintiff bank did not have the power to rescind.

For the reasons thus stated, the judgment of the trial court, in so far as it denied recovery to Eggleston, Joins, Anderson, and Kaufman, is reversed, and is here rendered in favor of Eggleston and in favor of Joins, Anderson, and Kaufman for the mineral interests in the land respectively claimed by each; and otherwise is affirmed. The cost of this appeal is taxed against the appellees.