## HOOVER et al. v. GENERAL CRUDE OIL CO.

### No. 11905.

Court of Civil Appeals of Texas. Galveston.

Oct. 16, 1947.

Rehearing Denied Dec. 4, 1947.

Ewing Werlein, Vinson, Elkins, Weems & Francis, C. E. Bryson and W. H. Francis, Jr., all of Houston, for appellants.

Andrews, Kurth, Campbell & Bradley, T. A. Slack, Raymond A. Cook and W. M. Streetman, all of Houston, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellants, Mrs. Mildred Hoover et al., against appellee, General Crude Oil Company, under the Texas Uniform Declaratory Judgments Act, Vernon's Ann.Civ.St. art. 2524—1, and in trespass to try title.

In a trial before a jury, after appellants had introduced their testimony and rested, and before appellee had put on any testimony, the trial court granted appellee's motion for an instructed verdict and judgment, and rendered judgment in favor of appellee. The court found in the judgment rendered that appellee had the right to declare a forfeiture of an oil and gas lease granted by trustees for the Thomas E. Davis estate to John S. Hoover; that by its pleadings in this cause, it had declared a forfeiture thereof and that as among the parties to this cause, said lease was void.

The record shows that on November 22, 1928, Thomas E. Davis estate executed and delivered to John S. Hoover a certain oil and gas lease on all of the David L. Koker-

not League Survey in Harris and Liberty Counties, Texas, comprising 4,477.9 acres of land. The lease was later amended by an agreement between the parties. Appellants are the heirs, executors or assigns of John S. Hoover.

Hoover assigned this oil and gas lease in so far only as it covered 805.9 acres out of the southeast corner of said League to Union Exploration Company. It passed by mesne assignments to appellee, General Crude Oil Company.

The lease as amended, provided for the drilling of a well on said 805.9 acres of land within a specified time to a certain depth unless oil or gas was found at a lesser depth in paying quantities. Hoover's assignee, as part of the consideration for the assignment of the lease as to said 805.9 acres of land, agreed to drill the first well called for in said lease. Hoover retained a 1/32nd overriding royalty in said assignment.

On December 12, 1944, appellee acquired from the trustees of the Davis estate the fee-simple title to all of the oil, gas and other minerals in and under the Kokernot League. This deed provided that the conveyance was made subject to any valid outstanding oil and gas leases on the land.

Appellee drilled the first well provided for in said lease as amended on the 805.9 acre tract assigned to it, and completed it as a producer of oil and gas in paying quantities on December 9, 1929. Between November 3, 1929, and December 12, 1944, appellee drilled and completed 30 wells on said 805.9 acres, and this 805.9 acre tract of land has continuously produced oil and gas in paying quantities since the completion of the first well thereon in December, 1929.

The lease contained the provision that: "In the event that oil and gas are found in paying quantities on said premises by said lessee, this agreement of lease shall remain in force so long as oil or gas, or either of them, are produced in paying quantities from said premises by the said lessee and all the terms and conditions hereof are complied with by him. * * *"

As amended, the lease contained a specific obligation to drill a well within a certain time to a certain depth unless oil and gas should be found at a less depth in paying quantities and provisions as to what the rights and duties of the parties would be should the first well be a dry hole. The provisions of the lease as to the drilling of said first well within the time specified were complied with and the provisions of the lease as to the rights and duties of the parties if the first well should be a dry hole, were made inoperative.

The continuous drilling clause which fixes the drilling obligations after the discovery of oil or gas in paying quantities reads as follows: "Third.—In the event that oil or gas are found in paying quantities on the said premises the Lessee shall and will thereafter prosecute continuously the drilling of wells with due diligence so as to produce and take from the said premises as promptly as possible the greatest amount of oil and gas possible. All such wells and all operations hereunder to be drilled sunk, operated, prosecuted and carried on according to the approved methods to produce and sell promptly and continuously the greatest amount of oil and gas and so conducted as not to unnecessarily injure or impair the value of any minerals or interests not covered hereby, the right to develop and explore the premises for any minerals other than oil and gas in the usual and proper manner without unnecessarily interfering with the operations of Lessee is hereby specifically reserved to the Lessors;

"If prior to or after the discovery of oil or gas on said leased premises and while this agreement shall be in force there shall be drilled on adjoining property and within two hundred feet of any line of said leased premises a well producing oil or gas in paying quantities the Lessee will and shall with all reasonable diligence begin and prosecute to completion the drilling of a well on said leased premises adjacent thereto in a faithful effort to find and produce therefrom oil and gas in paying quantities. After the discovery of oil or gas in paying quantities on the premises the obligation of the Lessee to offset wells on adjoining premises shall be to drill such of said wells as a prudent responsible operator would drill under the same conditions if he owned the premises hereby leased. The Lessee hereby further agrees to pay to the owners thereof the

actual value of any growing crops, live stock, buildings or other personal property under the surface land of said leased premises which may be injured or destroyed by any operations hereunder and to save and keep harmless the lessors from any and all claims demands or liabilities whatsoever by reason of such operations."

Paragraph Fifth of the lease contains an express forfeiture clause which reads: "Fifth.—In the event that Lessee shall fail or omit to commence the drilling of a well on or before June 1, 1929, as herein provided or shall fail or omit to diligently prosecute drilling operations within the time or times herein mentioned or to comply with all or any provisions hereof and the expiration of ninety days thereafter then, and in such case, or cases, or any of them, all rights of the Lessee hereunder shall at the option of the Lessor cease and determine and these presents be deemed terminated without releasing the Lessee from liability for damages or otherwise by reason of the breakage by the Lessee of all or any of the provisions hereof, excepting only that the Lessee shall retain the right to operate on the royalty basis above referred to any well or wells then producing oil or gas in paying quantities so long as oil or gas in paying quantities is produced therefrom by the Lessee."

The habendum clause of the lease reads: "Second.—In the event that oil and gas are found in paying quantities on said premises by said Lessee this agreement of Lease shall remain in force so long as oil or gas or either of them are produced in paying quantities from said premises by the said Lessee and all the terms and conditions are complied with by him."

The lease also contains a clause with respect to the duties and obligations of the parties in the event the lease is assigned or transferred. It reads as follows: "Either party shall have the right to assign and transfer this lease, but if the Estate or rights of either party to this lease is so assigned, the covenants thereof shall extend to and bind the heirs, executors, administrators, successors or assigns of the party so assigning. * * *"

Appellants did not prosecute any drilling operations on the balance of the Kokernot League retained by them except the drilling of two dry holes, one which it caused to be drilled by the Crown Central Oil Company in March and April of 1936, and the other by Atlantic Oil & Refining Company in January, February and March of 1943.

The original petition in this case was filed on August 6, 1945. In two of the original answers filed by appellee, one on December 10, 1946, and the other on January 7, 1947, appellee declared the lease forfeited on the entire 4477.9 acres of land.

The controlling issue presented in the appeal is whether the trial court was correct in holding that appellee was authorized to declare said lease forfeited under the facts in the record under the terms and conditions of the lease.

It is undisputed in the record that, during the time appellants held said lease on the land in question, they caused only two wells to be drilled on the 3672 acres of the lease retained by John S. Hoover.

Appellee purchased the fee-simple title to the minerals estate in and under the entire Kokernot League in December, 1944, and thereby merged the fee title of the mineral estate in said land with the leasehold estate as to the 805.9 acre tract assigned to appellee. By its purchase appellee not only acquired the mineral fee to the whole league, but it relieved itself of the burden of continuously drilling this property, or of risking a forfeiture of its rights to the undeveloped part thereof by the trustees of the Davis estate.

After its purchase of the mineral estate in and under the entire Kokernot League, appellants' position with reference to the ownership of an interest in the mineral estate in the Kokernot League was also changed in that appellee was no longer obligated to drill the land while appellants were still bound by the continuous drilling and forfeiture clauses of the original lease, and the right to declare a forfeiture of the lease had passed from the trustees of the Davis estate into appellee, and the burden of continuous drilling was then upon appellants.

It is undisputed in the record that appellants did not comply with the drilling covenants and condition of the original. No wells were drilled by them on any part of

the league between February 6, 1944, and the time of the trial of this suit on August 6, 1945. Prior to that time no wells had been drilled by them since February 6, 1944. Appellee declared the lease forfeited by its two pleadings filed on December 10, 1946, and January 7, 1947.

The habendum clause of the lease, supra, contains not only the provision that the lease shall remain in force so long as oil and gas is produced in paying quantities, but it stipulates as an additional condition that in order to keep the lease in force all of the terms and conditions of the lease must be complied with by the lessee.

The clause providing for the assignment of the lease contained in paragraph Fourth thereof gives the parties the right to assign but provides that if either party does assign, the covenants of the lease shall extend to and bind the heirs, executors, administrators or assigns of the parties so assigning. Under this provision the heirs, executors and assigns are still bound by the covenants of the lease.

■ Appellants contend that the phrase "With due diligence" in paragraph Third of the lease applies only to proven territory, and that its requirements are limited to drilling wells to a depth from which production has already been secured. This contention cannot be sustained. The language is, we think, clear and unambiguous. It provided that lessee, after the discovery of oil or gas in paying quantities, must drill continuously without unreasonable lapses and that, in the event of unreasonable delay, at lessors' option, they might forfeit all of the lease which had not been proven to be productive.

■ Under these facts, we think it clear that appellants did not comply with the continuous drilling clause of the lease, which was in no way restricted and that appellee, under the terms of the lease, had the authority to declare a forfeiture, as it did, upon appellants' failure to comply with the lease's continuous drilling clause.

Appellants also contend that appellee was required to give notice of its intention to forfeit said lease and a reasonable time within which to remedy the default before the forfeiture could be declared. They

rely upon the decisions in the cases of Hanover Company v. Hines, Tex.Civ.App., 11 S.W.2d 621, and West Lumber Company v. Henderson, Tex.Civ.App., 238 S.W. 710, 711, in support of this contention.

The case of Hanover Co. v. Hines involved a lease without a forfeiture clause, and does not support appellants' contention. The court in its opinion pointed out that by express provisions in a lease a lessor could make an implied covenant a ground of forfeiture.

In the case of West Lumber Company v. Henderson, supra, the court denied the rescission, because it found as a fact that the entire consideration had already been paid to the vendor, and found that the vendor had not in fact elected to rescind.

■ In the case of W. T. Waggoner Estate v. Sigler, Oil Co., 118 Tex. 509, 19 S.W.2d 27, 30, the Supreme Court in its opinion, quoting with approval from Summers, Oil & Gas, page 519, said: "The correct rule seems to be that, while the usual 'drill or pay' clause in an oil lease does introduce a condition subsequent, for the benefit of the lessor alone, yet, as said by Mr. Summers, 'Where the "unless" drilling clause is used, a failure of the lessee to drill or pay a stipulated sum of money ipso facto terminates the lease, without the necessity of re-entry, action or their equivalents by the lessor.'"

■■ It is well settled in this State that it is the duty of the trial court to construe a written lease whose terms are plain and unambiguous and that no issue should be submitted to a jury if it involves the construction of a contract or calls for the construction of a question of law by them. Hanover Co. v. Hines, supra, affirmed by Commission of Appeals in 23 S.W.2d 289; Booth v. Campbell, Tex.Civ.App., 240 S.W. 559; Steinberg v. Morton, Tex.Civ.App., 300 S.W. 253.

The terms of the lease under consideration in this case are, we think, clear and unambiguous and the trial court did not err in holding that appellee had the authority under the facts to declare a forfeiture.

We have fully considered all other propositions presented in appellants' brief not expressly referred to in this opinion. None

of them, in our opinion, showed error in the record which requires a reversal of the trial court's judgment. The judgment of the trial court is in all things affirmed.

Affirmed.

## On Appellants' Motion for Rehearing

GRAVES, Justice (dissenting).

Upon further consideration of the cause on rehearing, this member of the Court is unable to acquiesce in the refusal of appellants' motion for rehearing, concluding rather that it should be granted and the cause reversed and remanded to the trial court for another hearing, upon considerations which, in very brief part, may be thus outlined:

(1) The trial court erred in instructing a verdict against the appellants, because the evidence raised material issues of fact over whether or not they had exercised—at least as affected the appellee—the diligence called for in the lease contract involved.

(2) The trial court erred in construing provisions 3 and 5 of such lease contract as giving to the appellee—notwithstanding the changed positions between it and appellants since the execution of the original lease—the absolute right to forfeit, without prior notice, all rights of the appellants in the remaining 3,600 acres of the land they had still retained.

(3) The trial court erred in holding that the purchase by the appellee—without notice to the appellants—on December 12 of 1944, from the trustees of the Davis estate, of the fee-simple title to all the Kokernot League, not only relieved the appellee itself of all further obligations concerning the development of any part of the land for oil and gas, but also conferred upon it the unconditional right to declare all rights and privileges in the leasehold as to the remaining 3600 acres of the appellants terminated, upon its mere claim that they had violated the continuous drilling-obligation—that is, paragraph No. 3 of the lease.

(4) The question of whether or not the appellants had complied with the drilling-obligations in the lease constituted a mixed question of fact and law; especially so, as between them and the appellee, and those issues—in so far as they embodied inquiries of fact—should have been submitted to a jury for its findings thereon.

(5) The evidence further raised questions of fact over whether or not the appellee itself had caused the appellants not to drill further wells upon the 3,600 acres; or, at least, whether it had hindered and delayed their doing so, by its testified to interference with appellants' efforts during the several years preceding the belated declaration by the appellee of forfeiture for the first time, by its two pleadings filed in the cause as late as December 10, of 1946, and January 7, of 1947, respectively.

(6) Paragraph 3 of the lease, when attempted to be applied between the parties hereto under the changed conditions that had ensued between them, since they themselves became lessors and lessee, as to the 805.9 acres of the land that had originally been so sublet as between them, was not clear and unambiguous in its expression as to what was meant by due diligence in the development of the land; hence, the trial court should have heard and considered evidence as to what was meant by the term "due diligence", as between such lessors and lessee in circumstances like those that had so developed here; that is, after the appellee had become the grantee from the Davis heirs as to the title to the land still remaining under lease to the appellants, in order that the mutual obligations of each with reference thereto might be determined at the time of this trial.

(7) The trial court erred in holding that, regardless of whether or not there was under the facts existing any reasonable possibility of oil being found thereon, and without inquiring into the facts relating thereto, that the appellants were bound to the appellee to continuously drill wells on the 3,600 acres, in any event.

Under these conclusions, the motion for rehearing should be granted, and the cause reversed and remanded.

Motion for rehearing refused.