CONTINENTAL STATE BANK OF BIG SANDY, TEXAS, ET AL. V. D. G. PEPPER ET AL.

No. 6606.  Decided June 16, 1937.
Rehearing overruled July 21, 1937.
(106 S. W., 2d Series, 654.)

*T. B. Stinchcomb, Bramlette & Meredith,* and *Cecil N. Cook,* all of Longview, *Phillips, Trammell, Chizum, Price & Estes,* and *James & Conner,* all of Fort Worth, *Victor C. Mieher,* of Tulsa, Oklahoma, and *Black & Graves,* of Austin, for plaintiffs in error.

It was error for the Court of Civil Appeals to hold that W. L. Perdue, the junior lien holder, did not have the right, acting alone and without the joinder of the Federal Land Bank, to appoint B. C. Todd as substitute trustee and to request such substitute trustee to sell the land in controversy under the terms and provisions of the original Hamilton deed of trust. Whitehead v. Fisher, 64 Texas 638; Douglass v. Blount, 95 Texas 369; Houston v. Johnson, 197 S. W. 1121; Bomar v. West, 87 Texas 299, 28 S. W. 519; Vogel v. Zipp, 90 S. W. (2d) 668.

*Greenwood, Moody & Robertson,* and *Ben H. Powell,* all of Austin, *Wm. G. Davisson,* of Ardmore, Oklahoma, *William Hodges,* of Texarkana, *Campbell & Leak, Taylor & Story,* and *Edward Lee,* all of Longview, for defendants in error.

On the propositions regarding the invalidity of the substitute trustee's sale and the bank's right to rescind its sale to Pepper. Michael v. Crawford, 108 Texas 352, 193 S. W. 1070; Allen-Morrow Co. v. Liquid Carbonic Co., 27 S. W. (2d) 132; Jones on Mortgages, Sec. 1774; 10 Tex. Jur. 8.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

Plaintiffs in error after trial before a jury in district court recovered judgment against defendants in error for the title and possession of a tract of 100 acres of land in Gregg County. The Court of Civil Appeals reversed the trial court's judgment in so far as it denied recovery to defendants in error Eggleston, Joins, Anderson and Kaufman, and rendered judgment in their favor for the mineral interests claimed by them. 60 S. W. (2d) 1089.

Continental State Bank purchased the land at trustee's sale foreclosing a lien, and thereafter leased the land for oil, gas and other minerals to Amerada Petroleum Corporation. Pepper and wife were the owners of the land incumbered by the deed of trust lien and other liens at the time of the trustee's sale. The other defendants in error have a mineral lease and conveyances of mineral interests from and under Pepper and wife executed after the trustee's sale. The controversy is determined in favor of plaintiffs in error by our conclusion, after careful consideration of the record and the many briefs, that the trustee's sale was valid.

The deed of trust was executed by W. W. Hamilton and wife to secure a promissory note in the sum of $1,400.00, dated February 22, 1919, and due March 1, 1926. Mrs. Hamilton, after her husband's death, conveyed the land to W. M. Harris, who assumed payment of the $1,400.00 note, and on February 10, 1923, Harris and wife conveyed the land, subject to the indebtedness evidenced by said note, to plaintiff in error, Continental State Bank. W. L. Perdue, cashier of said bank, became the owner of the note and the lien securing it.

On May 15, 1926, the Continental State Bank sold and conveyed the land to defendant in error D. G. Pepper, the deed reciting Pepper's assumption of the $1,400.00, the payment of $205.00 in cash, and the execution by Pepper of his note to the bank for $1,640.00 payable in annual installments of $205.00 and secured by vendor's lien. The bank in connection with the sale of the land undertook to induce the Federal Land Bank to take up and extend the $1,400.00 note, entering into negotiations for that purpose before the deed was made to Pepper. The Land Bank, after considering Pepper's formal application for the loan to be secured by a first lien on the land, advised Pepper in writing on June 7, 1926, that it would make him a loan of $1,000.00 from which would be deducted a stock subscription of $50.00 and that it would be necessary for him, in order to avail himself of the loan, to pay the remainder of the existing indebtedness or arrange with the holder thereof to carry the balance as a second lien. Pepper on June 12, 1926, sent

the Federal Land Bank his written acceptance of the loan as offered.

Pursuant to the foregoing negotiations Perdue, the owner of the $1,400.00 note, executed to the Federal Land Bank on June 17, 1926, a formal assignment of $950.00 of the note and a conveyance of the lien securing the indebtedness assigned, the instrument expressly providing that the note or part thereof assigned to the bank and the amortization note in the sum of $1,000.00 executed by Pepper should be and remain a first and superior lien on the land and that the remainder of the debt represented by the note held by the grantor should be and remain a second and inferior lien. Perdue retained the $1,400.00 note and it was credited, as the assignment provided, with the $950.00 paid him by the Federal Land Bank.

On the same date, June 17, 1926, Pepper and wife executed to the Federal Land Bank their promissory note in the principal sum of $1,000.00 payable on the amortization plan in sixty-nine semiannual payments and their deed of trust conveying the land in controversy to M. H. Gossett, trustee, to secure payment of the said note. The deed of trust recites that the note which it secures was executed in extension of $950.00 of the $1,400.00 note and that the balance of $50.00 is for money advanced by the bank to the mortgagors to pay for stock incidental to the loan and that the mortgagors agree that the Federal Land Bank is subrogated to all the liens, superior title, etc., held, owned or possessed by the owner or holder of the note, whether released or transferred.

There was no extension to any definite time of the $450.00 balance due on the $1,400.00 note held by Perdue. According to the jury's finding Perdue agreed to carry this balance temporarily until it could be determined whether the Federal Land Bank would increase the loan, provided Pepper would pay interest on such balance, would move on the place, and pay all installments and interest on the $1,640.00 note that he had executed to the Continental State Bank. These conditions Pepper did not perform; and Perdue on January 10, 1928, requested F. W. Bartlett, who was named as trustee in the deed of trust executed by Hamilton, to advertise the land for sale under the terms of the deed of trust. Upon Bartlett's refusal to act and resignation Perdue by written instrument executed March 9, 1928, appointed B. C. Todd substitute trustee to sell the property under the said deed of trust. Todd advertised the land for sale, sold it at public auction to Continental State Bank for $150.00 on April 3, 1928, and executed his deed conveying the land to the bank. The sale and the conveyance were expressly made sub-

ject to the outstanding first lien held by the Federal Land Bank. That bank was not notified of the sale and did not join either in the appointment of the substitute trustee or in the request to make the sale.

■ Defendants in error attack the trustee's sale on several grounds. They concede that the balance of $450.00 owned by Perdue after his assignment of $950.00 of the note to the Federal Land Bank was secured by lien upon the land, but contend that the lien securing such balance could not be foreclosed by trustee's sale, that it was a junior mortgage without power of sale. It is argued that the phrase contained in the assignment, "hereby transferring and assigning unto said bank all the right, title and interest held and owned by grantor in and to the indebtedness above described, together with all and singular all liens, superior title, rights, equities and interest in and to said land now owned or held by the grantor to secure the payment of said indebtedness," had the effect of divesting Perdue of every interest, right and remedy that the Hamilton deed of trust gave him as the owner of the $1,400.00 note except the second and inferior lien that a subsequent paragraph of the assignment saved to him. We do not so construe the assignment. The words quoted immediately follow that part of the instrument which assigns to the Federal Land Bank $950.00 of the $1,400.00 note. The words "indebtedness above described" and "said indebtedness" have reference to the $950.00 assigned. The liens and other rights are transferred to the Federal Land Bank in so far as they secure and are incidental to that part of the note assigned,—such construction being consistent with, if not required by, the rule that the lien is incidental to the debt and inseparable from it. Pope v. Beauchamp, 110 Texas 271, 276, 219 S. W. 447; West v. First Baptist Church, 123 Texas 388, 404, 71 S. W. (2d) 1090. The entire debt was not assigned by Perdue, nor was the entire lien assigned. The lien was incident to the entire debt and the power of sale was incident to the entire lien. It is not to be assumed or implied that the power of sale was destroyed by the assignment or that all of the power passed to the assignee. The assignment read as a whole clearly evidences the intention of the parties that the Land Bank should be the owner of $950.00 of the $1,400.00 note and that Perdue should remain the owner of $450.00 of the note, and that the indebtedness held by each of such owners should be secured by the Hamilton deed of trust, with the rights and remedies afforded by it, except that the lien in so far as it secured the $450.00 balance retained by Perdue should be second and inferior.

■ The further argument is made that neither the assignment nor any other instrument contemporaneously or subsequently executed contained an express grant of power to foreclose by trustee's sale the lien securing the $450.00 debt, and the rule against implied grants of this nature is invoked. There was no necessity for the creation of a new power of sale or for resort to implication. Power to sell was expressly given by the Hamilton deed of trust to the trustee or to a substitute trustee "upon the request of the holder or holders of the indebtedness secured hereby." Perdue was a holder of $450.00 of the debt secured by the Hamilton deed of trust. He was indeed the actual holder of the $1,400.00 note with a credit of $950.00 indorsed upon it. He invoked the power granted by that deed of trust and under it the substitute trustee's sale was made. The power given by the Hamilton deed of trust had not been exercised, and there is no evidence in the assignment or elsewhere in the record of any agreement or intention to release, revoke or abrogate the power.

Defendants in error rely upon Bomar v. West, 87 Texas 299, 28 S. W. 519, to support the conclusion of the Court of Civil Appeals that the trustee's sale was void because the Federal Land Bank did not join in or consent to the appointment of the substitute trustee and the foreclosure proceeding. In that case a deed of trust executed to secure the payment of five promissory notes payable to Bomar provided that on default in payment of the notes or any of them foreclosure of the trust deed should be had at the instance of Bomar or the legal holder of the notes. One of the notes was transferred by Bomar to the West Publishing Company and the others were transferred to Callahan. The maker failed to pay the note held by the West Publishing Company and the trustee at the request of that company alone advertised and sold the land. It was held that "the deed of trust not having provided that a holder of any one of the notes should have a right to demand a sale, the trustee acted without authority and his sale passed no title."

The deed of trust executed by W. W. Hamilton empowers the trustee or substitute trustee, "upon the request of the holder or holders of the indebtedness secured hereby," after default in the payment of the indebtedness or after breach of any covenant in the deed of trust, to sell the property at public auction, and it provides that a substitute trustee may be appointed by "the payee or holder of said note." It may be conceded, without deciding it, that if no other action had been taken by the interested parties than that evidenced by the assignment from Perdue to the Federal Land Bank, the rule quoted above from

the opinion in Bomar v. West would be applicable to the instant case, but in our opinion a state of facts was created by agreement of the parties to which that rule has no proper application. The agreement is evidenced by the assignment, the new note executed by Pepper and wife to the Federal Land Bank, the new deed of trust given to secure the new note, and the crediting on the Hamilton note of the $950.00 paid by the Land Bank to Perdue. All of these were contemporaneously executed and represented a new arrangement and agreement of the interested parties whereby the original $1,400.00 debt was divided into two debts separately owned and separately secured by two different deeds of trust. Perdue remained the owner and holder of the original $1,400.00 note credited, however, with $950.00 and that debt so owned by Perdue was secured by the deed of trust executed by Hamilton, the lien securing Perdue's note being made by the terms of the assignment second and inferior to the lien securing the debt owned by the bank. The Federal Land Bank became the owner and holder of a new note executed by Pepper and wife in renewal and extension of the $950.00 of the Hamilton note assigned to the Land Bank. This new note was secured by a new deed of trust executed by Pepper and wife to M. H. Gossett, trustee, providing that the lien evidenced thereby and securing the new note would be subject to foreclosure through sale made by the new trustee, *at the request of the owner or holder of said new note,* upon default in any of the payments due on said note or if the property should be sold at foreclosure sale under a junior lien or in the event of a breach of other agreements or covenants set out in the new deed of trust. A number of conditions and provisions are contained in the new deed of trust which are different from and inconsistent with those set out in the deed of trust executed by Hamilton.

It is apparent that the Land Bank, the owner of the $950.00 debt that had been assigned to it by Perdue, and Pepper and wife, the owners of the incumbered land, intended and agreed that the debt should be paid at the times named and on the terms set out in the new note and that in the event the Federal Land Bank foreclosed without suit the lien securing such debt it should proceed under and in accordance with the provisions of the new deed of trust and not under the Hamilton deed of trust.

■ Our conclusion, that the Federal Land Bank by procuring the execution of the new deed of trust surrendered its right to proceed under the Hamilton deed of trust, is not inconsistent with the fact that the Land Bank took an assignment of the

original lien from Perdue in so far as it secured the $950.00 and incorporated in the new deed of trust a clause by which the grantors agreed that the bank should be subrogated to the rights, liens, etc., of the owner of the original note. These are the precautionary steps customarily taken to preserve and carry forward the original lien in order to obviate questions of priority and homestead. The general language of the subrogation clause must be read in connection with, and is restrained by, the particular stipulations in the new deed of trust as to the time, conditions and manner of foreclosing the lien by trustee's sale. By the statements hereinbefore made that the Land Bank's new note was secured by a new deed of trust, we do not mean to say that a new lien was created. The new deed of trust did not create a new lien. It secured the new note in the sense that it evidenced the continued existence of the original lien and prescribed new terms and conditions for foreclosure, by trustee's sale, of that lien in so far as it secured the $950.00 renewed and extended debt. W. C. Belcher Land Mortgage Company v. Taylor, (Com. App.) 212 S. W. 647.

The facts above discussed distinguish the case from Bomar v. West, supra. In that case no new deed of trust was executed to secure any of the assigned notes. There was no substitution for the benefit of any of the note holders of a new method of foreclosure in a new deed of trust to take the place of that given by the original deed of trust. In Bomar v. West it was held that the trustee's sale could not be made upon the request of the holder of one of several notes because the deed of trust did not so provide,—the parties had not contracted that it could be made upon the request of the holder of one of the notes. The clear implication is that the sale could have been made at the request of the holder of one of the notes if the parties had contracted that it could be. It is our opinion that the several instruments above discussed constituted an agreement on the part of Perdue and the Federal Land Bank, the owners of the indebtedness, and Pepper and wife, the owners of the incumbered land, the clear and unmistakable meaning and intention of which was that upon default in the payment of the debt held by Perdue he could proceed with foreclosure under the terms of the Hamilton deed of trust without the participation or consent of the Federal Land Bank and that upon default in the payment of the debt held by the Land Bank it could proceed under the terms of the new deed of trust to foreclose its lien without the participation or consent of Perdue.

From a practical viewpoint there is no good reason for requiring the consent or joinder of the Federal Land Bank in the

foreclosure by Perdue. The Land Bank was not interested in the debt held by Perdue or in the foreclosure of the junior lien securing it. The debt that it owned had been separated from that owned by Perdue and was evidenced by a new note and secured by a new deed of trust. Under the terms of that deed of trust, the Land Bank could not mature its note upon default in the payment of the note owned by Perdue, and could foreclose its lien only upon default in a payment due on the new note or in the event of the sale of the property at foreclosure under a junior lien or for breach of one of the conditions therein prescribed. The new deed of trust did not give the Land Bank the right to demand foreclosure upon default in the payment of the debt secured by the junior lien and before foreclosure sale under the junior lien, but it gave the Land Bank the right to demand foreclosure by its trustee in the event of, and after, the sale of the property at foreclosure under the junior lien. Thus it was clearly contemplated that foreclosure of the junior lien might be had without participation therein by the Federal Land Bank and that after sale at such foreclosure it could proceed separately with foreclosure of its own prior lien. The sale by the substitute trustee was expressly made subject to the Land Bank's prior lien and did not affect the lien or take from the Land Bank any right or remedy.

■ Defendants in error make the contention that Perdue, the Land Bank and Pepper and wife could not, in the absence of joinder by a representative of Hamilton's Estate, Mrs. Hamilton, Harris and the Continental State Bank, make a valid agreement that would permit foreclosure by Perdue under the original deed of trust without the participation or consent of the Land Bank and foreclosure by the Land Bank under the new deed of trust without the participation or consent of Perdue. It is argued that the making of two trustee's sales instead of one would tend to increase the expenses of foreclosure and to reduce the total proceeds of sale, with a consequent increase in the amount of the deficiency for which Hamilton and wife, as the makers of the $1,400.00 note, and Harris, as one in the chain of title who assumed payment of the note, would be liable in the event the proceeds from the two sales should be insufficient to pay the principal and interest of the debt and the expenses. The contention is untenable. Hamilton's estate, Mrs. Hamilton and Harris are not questioning the agreement or contesting the validity of the trustee's sale. The attack is made by Pepper and wife, who were parties to the agreement, and by the other defendants in error, whose claims under Pepper and wife originated after the trustee's sale was made. There have not been and will not

be two trustee's sales, as the debt held by the Land Bank has been paid. The record does not show that any effort has been made to hold the Hamiltons or Harris liable for a deficiency. The effect of the agreement upon liability of the Hamiltons or of Harris is a matter to be determined when an attempt is made to hold them liable. As to the Continental State Bank, which had a lien subordinate to the lien securing the $1,400.00 note, it is shown by the undisputed evidence that it consented to the making of the new arrangement or agreement, afterward ratified it, and now claims under the trustee's sale made in accordance with such arrangement.

■ The parties to the agreement, Perdue and the Land Bank, the owners of the indebtedness secured by the lien, and Pepper and wife, the owners of the incumbered land, were the parties interested in the subject matter of the agreement, the debt, the lien and the land, and they are bound by the agreement that they made. They undoubedly had the power and the right to extend the part of the debt held by the Land Bank and so to change the method of foreclosure by trustee's sale that there would be no necessity and no reason for the Land Bank's joinder in a trustee's sale foreclosing the subordinated lien securing the part of the debt held by Perdue. In W. C. Belcher Land Mortgage Co. v. Taylor, (Com. App.) 212 S. W. 647, a debt secured by an existing lien without power of sale was extended and a deed of trust securing the debt with power of sale was executed by the owner of the land. It was held that the land owner was authorized to execute the deed of trust binding her interest, that the contract did not create a new debt or a new lien but continued the original obligation and the lien securing it and that a sale made under the power given by the deed of trust was valid. If a land owner can by contract create a power of sale to enforce an existing lien, he can, as was done in the instant case, so modify an existing power of sale as to permit an owner of part of the secured debt to proceed with foreclosure without joinder by the owner of the other part of the debt.

■ Defendants in error attack the trustee's sale on the ground that Perdue was not the owner of the balance of $450.00 due on the Hamilton note at the time he caused the trustee's sale to be made. Perdue, who was cashier of the Continental State Bank, sold the note to the bank on July 6, 1926, and guaranteed its payment in writing. The jury found in answer to a special issue that on January 10, 1928, Perdue, with the consent or acquiescence of the Continental State Bank, substituted his $450.00 note to the bank for the balance of $450.00 due on the

Hamilton note and took the Hamilton note out of the bank's note case, and found in answer to another special issue that Perdue was the owner and holder of the Hamilton note for the period of time beginning January 10, 1928, to and including April 3, 1928, the date when the trustee's sale was made. These findings are supported by evidence. Defendants in error take the position that the transaction by which Perdue acquired the note from the bank was unauthorized and wholly void on account of noncompliance with Article 499 of the Revised Civil Statutes of 1925, which provides that no officer or employee of a bank shall have power to indorse or sell any note or other obligation received by such bank for money loaned until such authority shall have been given by the board of directors in regular meeting, and that all such acts by any officer or employee without such authority shall be null and void.

At the time Perdue gave his own note to the bank in exchange for the Hamilton note the bank was in process of liquidation and was not accepting deposits or otherwise engaging in the banking business. The First State Bank had acquired certain assets of the Continental State Bank and had assumed its liabilities to its depositors and other liabilities. No one except the stockholders was interested in the liquidation of the assets retained by the Continental State Bank. Article 499 is a part of the statutes regulating the incorporation and operation of state banks. It was enacted for the protection of the banks, their depositors and other creditors. It may be doubted that the article has any application to a bank no longer in business or to a note constituting part of assets in process of liquidation for the benefit of the stockholders.

But even if the article is applicable to a bank not engaged in the banking business, it is our opinion that Pepper, who was a debtor of the bank, not a creditor and not a stockholder, may not question the transaction by which Perdue acquired the note when the bank does not and can not question it. The jury found that Perdue acquired the note with the consent or acquiescence of the bank. After March 19, 1927, the bank had no paid employees. Perdue was assisting in the process of liquidation. He was solvent and was liable to the bank on his written guaranty of the Hamilton note. Before giving his note for the Hamilton note he obtained the consent and approval of Wilkerson, the president of the bank, and of Willis, a stockholder who in matters pertaining to the liquidation of the assets, and representing primarily stockholders residing in Fort Worth, conferred frequently with Wilkerson and Perdue. The bank's full consent to the sale of the note and its acceptance of the benefit of the

sale are evidenced by its purchase of the land at the sale made by the trustee at the request of Perdue as owner of the note and by its continued assertion of title under such purchase. It has been held that a bank that has accepted the benefit of a sale of its note made by an officer without compliance with Article 499 can not disclaim liability for the officer's fraud in connection with the sale. Washington County State Bank v. Central State Bank & Trust Company, 168 S. W. 456. See also Citizens' National Bank of Lubbock v. Ivey, 73 S. W. (2d) 133, 135 (application for writ of error refused). Thus a bank may be bound by a sale of its note made without compliance with the statute when it has ratified the sale and accepted the benefits of it; and when the bank is bound and can not question the sale, certainly one who has no interest in the bank, its assets, or its solvency, can not question it.

After careful consideration of all the assigments of error presented in the Court of Civil Appeals by defendants in error and of the arguments in the briefs filed in this Court, it is our opinion that the judgment of the Court of Civil Appeals should be reversed and the judgment of the district court affirmed. It is so ordered.

Opinion adopted by the Supreme Court June 16, 1937.

Rehearing overruled July 21, 1938.