LON C. McCRORY ET AL v. GEORGE E. SMELTZER ET UX.

No. 7248. Decided February 8, 1939.
(124 S. W., 2d Series, 336.)

384

*B. N. Richards,* of Dalhart, *Adkins, Pipkin, Madden & Keffer* and *W. L. Darrah,* all of Amarillo, for plaintiff in error.

A clause in the transfer of the vendor's lien notes reciting that all portions of the note not assigned had been paid and the lien release did not constitute a false representation, because if it could be said that there were any portions of the notes which were not assigned, then those portions were paid. Currie v. Trammell, 289 S. W. 736; McGuire, Helm & Co. v. Bid-

well, 64 Texas 43; First State Bank of Amarillo v. Cooper, 179 S. W. 295.

*Art Schloffman,* of Dalhart, *Taylor, Muse & Taylor,* of Wichita Falls, for defendants in error.

The clause in the transfer of the notes reciting that all portions of the vendor's lien notes not assigned had been paid and the liens securing same had been released constituted a fraudulent representation to the Federal Land Bank, and the subsequent acceptance by the defendants of new notes and liens for a purported balance constituted a fraud upon the plaintiffs as well as the bank, in violation of statutes and were and are in all things void. Republic Trust Co. v. Taylor, 184 S. W. 772; Read v. Smith, 60 Texas 379; Russell v. Douget, 171 So. 501.

*Carl Runge,* and *J. V. Wheat,* both of Houston, filed brief as amicus curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

In the year 1929 Lon C. McCrory and W. W. Lathem conveyed certain lands in Dallam County, Texas, to George E. Smeltzer. As consideration for these lands, Smeltzer assumed payment of an indebtedness due the San Antonio Joint Stock Land Bank in the sum of $10,000, and also executed vendor's lien notes to McCrory and Lathem for balance of purchase price. Smeltzer paid only a small amount on the notes due McCrory and Lathem, and in 1933 the whole indebtedness became largely due and was pressing. Apparently at the suggestion of McCrory and Lathem, Smeltzer made application to the Federal Land Bank of Houston for a loan, the purpose being to consolidate all amounts due against the land into one loan. After considerable negotiations, the Federal Land Bank agreed to make a loan of $15,500. Of this amount a sum sufficient to discharge the debt due the San Antonio Joint Stock Land Bank was to be paid by the Federal Land Bank in cash. The amount necessary to discharge the second lien indebtedness owing McCrory and Lathem was to be paid in bonds of the Federal Farm Mortgage Corporation, of which the Federal Land Bank was agent. On the part of the Federal Land Bank and the Land Bank Commissioner there appears to be no doubt that they intended that the loan of $15,500 should discharge all preexisting liens against the land; that is, the liens held by the San Antonio Joint Stock Land Bank and by McCrory

and Lathem.. Certain judgment liens which had become attached to the land were to be adjusted otherwise, as will hereinafter appear.

In order to obtain the consent of McCrory and Lathem to accept bonds in settlement and satisfaction of their notes secured by vendor's lien on the land, the Federal Land Bank sent them blank form to be executed evidencing their assent. They did not execute this formal assent but instead wrote the Bank the following letter:

"In connection with application No. 121315, Geo. E. Smeltzer, the undersigned are hereby agreeing to accept bonds of the Federal Farm Mortgage Corporation for such amount of money as would be available out of the proceeds of the $15,-500.00 loan to be made by the Federal Land Bank and the Land Bank Commissioner, after paying the San Antonio Joint Stock Land Bank the amount of indebtedness due them; also all taxes against the land; also after deduction of the Stock in amount of five per cent in the local association, and other necessary expenditures in connection with the closing of the loans.

"The amounts due on judgments secured by J. B. Colt Company, also the Allen Tractor Company, now the Caterpillar Company, also the Phillips Petroleum Company, and another judgment for something less than one hundred dollars which I understand to be in favor of some paint company, all these have been arranged for by Mr. Smeltzer. The undersigned Lon C. McCrory and W. H. Lathem will advance the money for payments of these amounts at the time of closing, and will also pay for the abstract and recording and for the fire insurance, if the insurance has not already been paid.

"We are not signing the form which indicates the exact amount we will take in bonds in full satisfaction of the indebtedness due us since we do not know just how this will stand after the necessary expenditures shall have been made, but if you will send to the Secretary-Treasurer the necessary papers for the closing of the deal, giving to the undersigned all available bonds, the above adjustments on payments can be made here as indicated."

Before the loan could be consummated it became necessary for the judgment liens to be satisfied. McCrory and Lathem, by various efforts, were able to get the amount of these judgments reduced to the sum of $714.00, which amount they paid, and which appears to have been approximately one fourth of the amount of all such judgments.

At the time the loan was closed the Federal Land Bank

sent to the local secretary a transfer and assignment to be executed by McCrory and Lathem of their second lien notes. This transfer and assignment was executed February 26, 1934. Among other things it recited that in consideration of the sum of $4103.58 paid by the Land Bank Commissioner, acting in pursuance to Part 3 of the Emergency Farm Mortgage Act of 1933, they (McCrory and Lathem) sold and conveyed the unpaid balance of $4103.58, principal and interest owing on the series of vendor's lien notes previously executed by Smeltzer in part payment for the land mentioned. The instrument further transferred and assigned the lien and all right, title and interest which McCrory and Lathem had in and to said land by virtue of said notes. It contained the following paragraph:

"Any and all portion of said above described notes which is not hereby assigned has been fully paid and the lien securing payment thereof is hereby released."

Upon execution and delivery of this transfer and assignment and the vendor's lien notes the secretary of the local association delivered to McCrory and Lathem bonds of the Federal Farm Mortgage Corporation in the sum of $3800 with $18.18 accrued interest. While at the time the assignment was prepared it was thought the vailable bonds would amount to the sum of $4103.58, yet when the transaction was actually closed the available bonds amunted to only $3800. However, McCrory and Lathem accepted the bonds in accordance with the purport of the instrument which they had executed; that is, in full payment of the balance due on the vendor's lien notes and in full satisfaction of the lien previously held by them securing said notes.

On April 24, 1934, just prior to the closing of the loan, Smeltzer executed and delivered to McCrory and Lathem two notes, one in the sum of $1327.29, with a credit of $431.12 endorsed thereon, and the other in the sum of $1113.25, with a credit of $361.42 endorsed thereon, and Smeltzer executed deed of trust upon the land mentioned to secure payment of said notes. This deed of trust was not placed of record. The purported credits upon these notes arose in this way: Pending negotiations for the loan, and as a condition precedent to obtaining said loan, Smeltzer was required to file with the Federal Land Bank an affidavit that his total indebtedness did not exceed the sum of $17,000. In order to enable him to make this affidavit McCrory and Lathem agreed to place upon the vendor's lien notes the purported credits of $431.12 and $361.42, with an understanding that after the loan was obtained, and

Smeltzer executed notes for the balance due them, these credits would be restored to the principal indebtedness. The sums of $1327.29 and $1113.25 represented by the notes of August 24, 1934, included the $714.00 which McCrory and Lathem had advanced to satisfy judgments, and also included the difference between the face value of the vendor's lien notes, after deducting a large part of the interest, and the amount of bonds, towit, $3818.18, received by McCrory and Lathem from the Land Bank Commissioner. Sometime in January, 1935, the two notes mentioned were renewed by Smeltzer and wife and new deed of trust upon the land was executed. This deed of trust was then placed of record. When these notes were thus renewed the credits were omitted and became a part of the principal of the notes.

The present suit was instituted by Smeltzer and wife, who will be designated plaintiffs, against McCrory and Lathem, who will be designated defendants. The purpose of the suit was to procure a cancellation of the two notes above mentioned. It was claimed, among other things, that the notes were without consideration, in that the balance of the original vendor's lien notes held by McCrory and Lathem had been extinguished when those notes were assigned to the Federal Land Bank, with the recital that all portion of said notes not assigned had been fully paid and the lien securing payment thereof was released. There were other contentions raising the question of the validity of said notes, so far as the prior vendor's lien debt was concerned, in light of Federal Emergency Farm Legislation. In the district court a verdict was instructed in favor of defendants. The Court of Civil Appeals reversed and rendered the judgment on the ground that the notes were void. 101 S. W. (2d) 850. Writ of error was granted on the proposition that the notes were not void as to the $714.00 paid by defendants to satisfy judgment lien.

We will undertake to state here what we conceive to be defendants' fundamental contention. They apparently admit that the recitals in the transfer and assignment to the effect that they accepted the sum of $4103.58 in bonds as full payment and complete satisfaction of all unpaid balance on their vendor's lien notes, and that all portion not assigned had been fully paid and discharged, were entirely true. They admit that it was their purpose to assign all of the unpaid balance of said vendor's lien notes and release or transfer completely the second lien securing said notes. They in turn say, however, that just prior to the closing of the loan transaction Smeltzer

executed as of date April 24, 1934, the notes in question for the purpose of actually paying and discharging the difference in amount between the vendor's lien notes and the amount of the bonds; and that the vendor's lien notes to that extent had been actually paid and satisfied before being assigned to the bank. They therefore say that they could truthfully recite that "all portion of said above described notes which is not hereby assigned has been fully paid and the lien securing the payment thereof is hereby released;" although the balance claimed to have been actually paid was not paid at all, but was represented by the notes of April 24, 1934, secured by lien on the land. It seems to us too plain for argument that the manifest purpose was not to treat the new notes as a *payment* upon the old notes to the amount of same, but was clearly an attempt to extend and keep alive the balance. This conclusion is inevitable in view of the fact that the record is replete with testimony of defendants themselves showing that they discussed with Smeltzer, prior to closing of loan, the matter of giving new notes for any balance between the value of the bonds and the agreed face value of the notes. As indicated above, they made credits on the notes with the understanding that these credits were to be restored to principal after the loan had been consummated and new notes had been executed. In fact, there is a pleading on the part of defendants to the effect that as Smeltzer offered to "reinstate the amount of said notes and to execute a new lien on said lands therefor, after said loans were completed, and these defendants consented thereto, and did release their vendor's lien," etc.,—plaintiffs were estopped.

As we construe the letter of defendants to the Federal Land Bank above set out it constitutes an unequivocal agreement to accept all available funds, represented by bonds, of the $15,500 loan, after certain deductions, in full satisfaction of their second lien indebtedness. But defendants assert that the last paragraph of the letter does not so indicate. That paragraph is as follows:

"We are not signing the form which indicates the exact amount we will take in bonds in full satisfaction of the indebtedness due us, since we do not know just how this will stand after the necessary expenditures shall have been made, but if you will send to the Secretary-Treasurer the necessary papers for the closing of the deal, giving to the undersigned all available bonds, the above adjustments on payments can be made here as indicated."

Defendants in argument seek to construe this paragraph as follows:

"The last paragraph of the letter recites very clearly that they were not signing the form submitted by the Federal Land Bank which stated that McCrory and Lathem would accept a certain amount in bonds *in full and complete satisfaction* of their indebtedness owing by Smeltzer. They give as their reason for not signing this instrument that they did not know then just how they would stand after necessary expenditures had been made. Now, what do they mean by stating that they did not know just how they would stand? It occurs to us that the only possible meaning that could be given to this is that they did not know then the amount of bonds they would receive, and they were unwilling to state in advance that they would accept the amount of bonds available in full and complete satisfaction of their indebtedness. In other words, they wanted to know what they were going to get before they committed themselves definitely that they would accept such amount as being in full and complete satisfaction of their indebtedness."

■ With this we cannot agree. The statement clearly means that the mount of bonds cannot be accurately stated for the reason that full adjustment of expenditures, etc., has not been made; but clearly implies that when the papers are sent to the secretary, "giving to the undersigned all available bonds," the amount can be then ascertained, and the bonds will be accepted in full satisfaction. In addition, in light of subsequent events, it appears obvious that the real purpose was to wait and give the parties an opportunity to ascertain the true amounts for which the renewal notes were to be executed; as it must be remembered that after the papers reached the secretary for closing the loan, and before it was finally closed, defendants required the execution of these notes, which bore date only one or two days before the final consummation of the loan.

We therefore conclude that the undoubted purpose of the parties in the execution and delivery of the two notes in question, so far as they sought to represent the balance on the vendor's lien notes, was to carry forward and keep alive a part of said indebtedness; although defendants had, on the face of the written instruments, assigned all unpaid balance of said notes and had fully released the lien securing same; and had agreed to accept bonds in lieu of said indebtedness. Such an agreement is contrary to the purpose, spirit and policy of the law under which the bonds of the Federal Farm Mortgage Corporation were exchanged for the prior vondor's

lien notes, and was therefore void. Cook v. Donner, 145 Kan. 674, 66 Pac. (2d) 587, 110 A. L. R. 244; Stager v. Junker, 188 Atl. 440; Anderson v. Horst, 132 Pa. Super 140, 200 Atl. 721; Chaves County Building & Loan Ass'n. v. Hodges, 40 New Mexico 326, 59 Pac. (2d) 671; Federal Land Bank of Columbia v. Blackshear Bank, 182 Ga. 657, 186 S. E. 724; Jessewich v. Abbene, 277 N. Y. S. 599; First Citizens Bank & Trust Co. v. Speaker, 287 N. Y. S. 831, affirmed on this point in 250 App. Div. 824, 294 N. Y. S. 587; Federal Bank of St. Paul v. Koslofsky, 67 N. Dakota 322, 271 N. W. 907.

The Act creating the Federal Farm Mortgage Corporation is almost identical in all its essential provisions with the Act creating the Home Owners Loan Corporation. The purpose and true spirit of the law under which bonds of the Federal Farm Mortgage Corporation are issued in lieu of preexisting indebtedness is the same as under the law pertaining to bonds of the Home Owners Loan Corporation. That purpose is succinctly and clearly set forth in the case of Anderson v. Horst, supra, and we adopt the following statement therefrom:

"The Home Owners Loan Corporation Act was one of the emergency measures enacted by Congress for the relief of distressed citizens. It was designed for the relief of home owners who were unable to carry or refund their mortgage indebtedness. It provided for the exchange of HOLC bonds in an amount not exceeding 80 per cent. of the appraised value of the mortgaged property for the mortgage and bond or other obligation, the Corporation to credit the difference to the home owner and thus reduce the amount owed by the home owner to that extent. It also provided for amortization of the loan by monthly payments sufficient to retire the principal and interest, (not exceeding 5 per cent.) within a period not to exceed fifteen years. The refunding could not be accomplished without the consent of the mortgagee. But if he consented—and his consent was entirely optional (Thorne v. Edwards, 147 Or. 443, 34 P. (2d) 640)—he must agree to accept said HOLC bonds in full settlement of his claim and release all his claim, or on request to assign the mortgage or other obligation without recourse to the Corporation. The bonds were guaranteed by the United States, and any loss sustained by the Corporation would be the loss of the United States which would have to be made up by general taxation. The purpose of the Act was, by agreement of the parties, to create a novation and reduce the principal of the mortgage debt and the interest, and extend the term of the mortgage, so as to permit the home owner to

remain in possession and by monthly payments, not considerable in amount, liquidate both principal and interest within fifteen years. It was not intended for the relief of mortgagees, but they could secure its benefits if they were willing to reduce their claims and accept in settlement HOLC bonds for the reduced amount. The advantage to them was the receipt of readily marketable bonds—for a less amount, it is true—in place of foreclosing their mortgages and buying in real estate for which there was no available market under the depressed conditions prevailing. Nor was it the intention of Congress that the Corporation should merely be substituted for the mortagee and should foreclose and buy in the mortgage and dispossess the home owner. The purpose and intent was to relieve pressing conditions and give the home owner a chance to work out his salvation. This could not be accomplished if following the refunding, and as a condition for the mortgagee's consent to it, the home owner should be burdened by a reassumption of the debt, or part of it, which had been settled and released. The natural and probable effect of such an assumption would be to lessen the ability of the home owner to make his amortization payments and thus imperil the plan which Congress had devised for his relief, and load up the Corporation with foreclosed real estate, to the injury of the Government and its taxpayers; and a levy upon and sale of the home owner's furniture and personal effects, which would destroy the character of the property as a home, would have the same effect."

We conclude therefore that the notes in question, in so far as they brought forward any part of the previous vendor's lien notes, are void, and the lien securing same is also void.

■ It is our opinion that the letter to the Federal Land Bank, set out above, clearly advised that the amounts paid by defendants in settlement of judgments are to be taken care of by Smeltzer personally, and the bank clearly by implication gave authority for that to be done. There was nothing, however, to indicate that Smeltzer was to take care of this debt by creating another lien against the property. On the contrary, the implication is exactly the other way, because the very transaction in which the parties were then engaged had for its purpose the extinguishment of all liens, save and except the one to be given the bank. Besides, the policy of the law was to prevent additional liens, as is evident from the cases above cited. There can be no doubt, however, that Smeltzer is personally liable for the payment of the $714.00, with interest. He got the full benefit of the satisfaction of the liens, and by accepting the loan became equitably bound to pay that amount.

The judgments of the Court of Civil Appeals and of the District Court are both reversed and the cause is remanded, with instructions to the trial court to enter judgment in favor of plaintiffs cancelling the notes in controversy to the extent only that they represent a portion of the prior vendor's lien notes, and cancelling the deed of trust securing same; leaving said note in full force as a personal obligation to the amount of $714.00, with interest from the date of notes.

Opinion adopted by the Supreme Court February 8, 1939.