## PAYNE v. MILLER.
### No. 11226.

Court of Civil Appeals of Texas. Galveston.
July 10, 1941.

Rehearing Denied July 31, 1941.

Ward, Kimbrough & Kirkman, of Corpus Christi, for appellant.

Russel A. Bonham and Mary Nan Bonham, both of Houston, for appellee.

CODY, Justice.

This was a suit in the usual form to recover on a promissory note brought by appellee against appellant. Appellee and appellant will be designated as they were in the trial court, plaintiff and defendant, respectively. The note was dated November 14, 1934, and was for the principal sum of $671.46. It was executed by defendant and made payable to the order of plaintiff.

Defendant pled by way of defense that the note was obtained from him by plaintiff by duress; that it was obtained from him by plaintiff in fraud of the Land Bank commission; also, that plaintiff had made such representations and warranties to the Land Bank Commissioner, in connection with a loan obtained by defendant from said Commissioner, that she, plaintiff, was estopped to enforce the note against defendant by reason of said warranties and representations made to the Land Bank Commissioner; also, that the note was executed in violation of the purpose, spirit and policy of the Act of Congress creating the Federal Farm Mortgage Corporation; also, that the note is without consideration. The facts upon which defendant based and supported said defense pleas he pled at length.

The case was tried without the aid of a jury, and judgment was rendered for plaintiff. Defendant first requested, and then withdrew his request, for findings of fact and conclusions of law. The question on appeal therefore is whether or not, viewed in their most favorable light, the facts proved sustain the judgment.

The facts are: In 1931, defendant and wife gave their note, payable to plaintiff, for $2,300 secured by a mechanic's and materialman's lien on a farm in Hidalgo County, due two years after date. This note was inferior to a prior $600 vendor's lien note. Both plaintiff's note for $2,300, and the prior vendor's lien note for $600, became past due in 1933, as did also taxes against the farm property. And then, at a time when plaintiff was visiting defendant and his wife, she told defendant she was in need of her past-due money. Defendant thereupon suggested that he might be able to get a loan from the Federal Land Bank and told how much he could get on the farm property, and said amount was less than enough to pay off the first lien note, and plaintiff's note in the sum of $2,300; plaintiff declined to accept the amount proffered her for her note which was $1,926.54 in bonds (payment of which was guaranteed by the Government under the Emergency Farm Mortgage Act of 1933, 48 Stat. 41). Defendant thereupon suggested to plaintiff the plan which was

followed, and which he now complains of as being illegal, namely, that if she (plaintiff) would transfer her note and lien to the Land Bank Commissioner, that he, defendant, would pay plaintiff, as he was able, the difference between the bonds she would receive (in the amount of $1,926.54), and the total amount of her note, in the sum of $2,300. Plaintiff replied to defendant that she would take a secured note for the said difference. Defendant testified in this connection: "I told her (plaintiff) that I could not give her security or a lien on the property for the note because the Land Bank Commissioner making the loan would not permit me to do so. And it was finally agreed that I would give (her) an unsecured note * * *."

The full amount of the indebtedness against the property was $3,200. The Commissioner approved the loan only for $2,-800, and under the loan of $2,800, which was to be obtained from the Commissioner, plaintiff was entitled to get bonds in the amount of $1,926.54.

By letter of November 14, 1934, plaintiff through her then attorney wrote the following letter to defendant which is self-explanatory:

"Enclosed find two copies of the agreement of Mrs. Doris Miller (plaintiff) to accept payment in bonds of the Federal Farm Mortgage Corporation in the sum of $1926.54 on your $3200.00 note.

"There is also enclosed note in the sum of $671.46 payable to Mrs. Doris Miller, to be signed by you. As soon as this note is received Mrs. Miller stands ready to execute the necessary papers to conclude this matter."

Plaintiff signed the following under date of November 14, 1934:

"*The following is a true and correct statement of the indebtedness which is owing the undersigned by the Applicant* (i. e., defendant) *whose name appears above.*

"Amount of unpaid principal........... $2300.00

"The above indebtedness is secured by a materialman's and mechanic's lien mortgages.

"The undersigned agrees to accept $1926.54 in full satisfaction of the hereinabove described indebtedness, payable in accordance with the provisions set out herein."

Plaintiff executed a transfer and assignment under date of February 25, 1935, which reads, so far as here material, as follows:

"The State of Texas
"County of Hidalgo.

"Know all men by these presents:

"That Mrs. Doris Miller, a feme sole, hereinafter called Grantor, whether there be one or more parties executing this instrument, for and in consideration of the sum of $1,926.54 in hand paid by the Land Bank Commissioner, acting pursuant to Part 3 of the Emergency Farm Mortgage Act of 1933, 12 U.S.C.A. § 1016 et seq., the receipt of which is hereby acknowledged, has this day bargained, sold and conveyed, and by these presents does bargain, sell, convey and assign, without recourse unto said Commissioner, the unpaid balance of $1,926.54, principal and interest owing on that certain mechanic's and materialman's lien note for the principal sum of $2300.00 dated August 27, 1931, executed by Will N. Payne and wife, Julia Payne, payable to the order of Mrs. Doris Miller due two years after date, secured by and more fully described in a certain Mechanic's and Materialman's contract executed by Mrs. Doris Miller to Will N. Payne, et ux., filed for record November 24, 1934, and now shown of record in Vol. ——, page ——, Mechanic's Lien Records of Hidalgo County, Texas, to which instrument and its record reference is here made for a better description of said note or notes and the land securing the payment thereof.

"And the Grantor hereby bargains, sells and conveys unto the said Land Bank Commissioner all of the right, title and interest now owned or held by Grantor in and to said land by virtue of said note or notes and the lien securing same, in so far only as said lien rests upon and against the lands described in Deed of Trust dated January 3, 1935, executed by Will N. Payne, et ux., Julia Payne, to A. C. Williams, Trustee, for the use and benefit of said Commissioner.

*  *  *

"*As part of the consideration for the execution of this instrument, grantor. warrants to the said Land Bank Commissioner acting as aforesaid, that any unpaid portion of the debt and lien hereinbefore described which is not hereby specifically transferred is fully, completely and irrevocably released, and grantor has not and will not require on accept directly or indirectly any payment, renewal, extension or*

*any other evidence of indebtedness for the unpaid portion of said debt.*

"This 25th day of February, A. D. 1925.
"Mrs. Doris Miller."

■ The assignment just referred to shows that plaintiff was acting under, and receiving the benefits of, the Emergency Farm Mortgage Act. The very law under which she received and accepted the bonds compelled her to cancel the remainder of the $2,300 indebtedness. McCrory v. Smeltzer, 132 Tex. 383, 124 S.W.2d 336. Under the foregoing instruments which we have copied, plaintiff was charged with the knowledge that in taking the note sued on she was taking a note to cover a portion of the debt which she bound herself to cancel and which, like a gambling debt, cannot be enforced in a court of law. We are constrained to hold that the judgment of the trial court must be reversed and here rendered in favor of defendants. It will be so ordered. Justice GRAVES dissents.

Reversed and rendered.

GRAVES, Justice (dissenting).

This dissent stems from what are regarded as the controlling facts developed at the trial, which may be thus, in material substance, stated:

The note sued upon here is dated November 14, 1934; more than three months after this date, the appellee, by instrument dated February 25, 1935, assigned to the Federal Land Bank the unpaid balance of $1,926.54, on an original mechanic's lien recorded November 26, 1934. This assignment is partly typed and partly printed, and contains the following provisions:

"* * * does bargain, sell * * * and assign * * * the unpaid balance of $1926.54 principal and interest owing on that certain mechanic's and materialman's lien * * *.

"And the grantor hereby bargains * * * unto the said * * * Commissioner all of the right, title and interest now owned and held by Grantor in and to said land by virtue of said note or notes and the lien securing same, in so far only as said lien rests upon and against the lands * * *."

The testimony of the appellee is, in part:

"Q. Now, prior to the time that they got this money from the Federal Land Bank, prior to receiving the money, had you any other agreements with the Paynes relative to any payments, any interest, or back payments on the note that had accrued? A. Yes, I had.

"Q. About how long before was it that you had taken this $671.46 promissory note in payment of the interest and back payments on the note which was secured by the lien? A. It was several months.

"Q. Did that $1926.54 pay any part of this $671.46 note here? A. No, it didn't.

"Q. This $671.46 note transaction was three months prior to selling the remaining part of the lien note to the bank? A. Yes.

"Q. So that the amount shown on this photostatic copy which Mr. Kimbrough has shown you is the amount that was due after you had given Mr. Payne credit for this $671.46 note on that loan secured by the mechanic's lien? A. Yes.

"Q. Now, the payments you received from the Federal Land Bank covered no part of this $671.46 note you had previously taken from Mr. Payne? A. No."

The appellant testified: "I thereupon suggested that, if she would sell and transfer her note and lien (to the Federal Land Bank) I would undertake * * * to pay her, as I could, the difference between the $1926.54 it would loan and the total amount due on her note. This she declined to do * * * but suggested that she would take a secured note for the difference. I told her that I could not give security or a lien on the property for the note because the Land Bank Commissioner making the loan would not permit me to do so. And it was finally agreed that I would give an unsecured note * * *."

Mr. W. E. Daly, attorney for the Federal Land Bank, testified in response to questions from the court:

"Q. There was four or five months time elapsed from the time the application (from appellant Payne to that Bank for this loan) came in until the loan was made? A. That is correct.

"Q. Just before you closed the loan, did you make any inquiry as to his (appellant Payne's) liabilities? A. No, sir, we approved it on the previous application.

"Q. Did you have any statement whatsoever from Mrs. Miller, saying he was not indebted to her in any sum on any other obligation? A. The only statement we have from Mrs. Miller is in this file, her agreement to accept payments, which is already in evidence.

"Q. You never made any inquiry of Mrs. Miller whether or not he might have

owed her other money which was unsecured? A. No, we don't deal direct with the lien-holder at all.

"Q. Doesn't the assignment show only a balance of $1900.00 due on this account? A. $1926.54.

"Q. It says on its face that there is only Nineteen Hundred and some-odd dollars due on the old lien? A. That is correct.

"Q. So far as you know it may have been reduced by a payment in cash? A. That is correct.

"Q. So far as the assignment is concerned, there was only a balance due on the lien of $1900.00? A. Yes."

This record is totally void of any evidence that the Federal Land Bank was actuated in making the loan by any representations of the appellee; rather it was action of the appellant himself. Whatever he did was at his own suggestion and of his volition, and whatever appellee did was at the suggestion of the appellant, as reflected by the appellant's own testimony.

There is, in the record, evidence that the Land Bank would loan only 75% of the appraised value of any property, and that the borrower should have a 25% equity in the land and in his assets, but nowhere in the record is there any evidence that, after giving the note of $671.46 to Mrs. Miller, the appellant would have had less than this required equity in either the property or his assets.

There was no requirement in this record that any debts of appellant would have to be "scaled down" to bring him within the qualifications for a Land Bank loan. They required no further statement from the appellant as to any change in the status of any of his debts from October 1, 1934, when the original application of appellant was made, until the time of making the loan in February, 1935.

No findings of fact or law were filed, the trial having been before the court itself; wherefore, there being a statement of facts in the record, the court will be presumed to have made the findings set out above, as in support of its judgment. Maryland Casualty Co. v. Walsh & Burney Co., Tex.Civ.App., 119 S.W.2d 94; Kinney v. Johnson, Tex.Civ.App., 135 S.W.2d 773; Massachusetts Bonding & Ins. Co. v. Pittsburg Pipe & Supply Co., Tex.Civ.App., 135 S.W.2d 818; Miller v. Texas General Agency Co., Tex.Civ.App., 141 S.W.2d 441.

Under them, it seems plain—even from the terms of the quoted assignment from the appellee to the Federal Land Bank Commissioner—that the note appellee recovered upon herein represented no renewal, extension, or continuation, of any part of the debt so transferred and assigned to the Commissioner, on February 25 of 1935; but that, under the express recitations of that instrument, it was wholly different and disassociated from other debts, being specifically limited to the $1926.54 the parties had agreed upon to be "the unpaid balance" then due upon the lien-note for $2,300, of August 27, 1931, and that appellant, appellee, and the Federal Commissioner, all understood that the appellee was only transferring that amount of her debt against the appellant as "the unpaid portion", "in so far as said lien rests upon and against the land."

Indeed, the concluding paragraph of such transfer, which the appellant underscores, and upon which mainly, if not exclusively, he appears to have based his claim of fraud and estoppel against the appellee to enforce the note sued upon, itself expressly provides that the appellee "will not require or accept directly or indirectly any payment, renewal, extension, or any other evidence of indebtedness, for 'the unpaid portion of said debt' "—that is, the $1,926.-54 agreed upon (on February 25 of 1935) as the unpaid portion of the debt, in so far as it carried the lien against the land.

So that, with the issuable facts all deemed to have been found in the appellee's favor, there thus appears no evidence whatever of any fraud by the appellee either against the appellant or against the Land Commissioner, nor of any estoppel in favor of appellant against her as to this wholly different note here involved; in fact, it undisputedly appears that appellant and appellee, full three months prior to the execution by her of such assignment to the Commissioner, at his own suggestion, had in good faith agreed to reduce the lien-indebtedness to the "unpaid balance of $1926.54", and for that to stand as the sole debt against the land, he to give her the unsecured note here involved for what he otherwise admittedly owed her, that is, $671.46.

In the next place, the appellee had no dealings with the Land Bank direct at all,

its own attorney, who handled all of the negotiations culminating in its taking over this lien on the "unpaid balance of $1,926.-54, having testified that all transactions had been between appellant and it, there being no negotiations between it and the appellee, and the bank having made its subsequent loan solely upon the act of this appellant; therefore, there can be no estoppel nor fraud upon her part in his favor, the fraud apparently having been on his side, if any was committed by either.

Wherefore, upon the cause as a whole, it is not thought there was any fraud upon the appellee's part, within the holding in McCrory v. Smeltzer, 132 Tex. 383, 124 S.W.2d 336, and Smeltzer v. McCrory, Tex.Civ.App., 101 S.W.2d 850, in that, as appears supra, the facts are entirely dissimilar to those ruling that cause; without undertaking a restatement, nor even a resume of the apparently controlling facts in that cause, it is enough—to structurally distinguish it from this one—to say that all the parties there, both the lien-holder and the maker of the note, just a day or two before the loan was made, deliberately gave false information as to the credits that had been made upon the note—in order to bring the total indebtedness of the maker within the limits set by the bank; whereas here, to the direct contrary, as appears from the above summary, this appellee was shown not to have done any fraudulent act or made any false representations to anybody—let alone this Land Commissioner; the Federal Land Bank's attorney, Mr. Daly, who handled the entire transaction for it, so in purport testified, saying that they had approved the loan application upon dealings between the Bank and this appellant alone, and that they had no dealings whatever with Mrs. Miller.

Not only so, but in the Smeltzer case the lien-holder, while assigning to the Land Bank all the recorded liens upon the land there involved, held on the side an unrecorded lien, which he subsequently recorded, and which included the credits he had represented to the Federal Land Bank as having been paid off prior to the time of the transfer to it; whereas here, in contrast, this appellee never took or had any other lien of any kind or nature against this land, having in good faith transferred all her lien upon it to the Bank three months after she had settled with appellant, by taking his unsecured note for the $671.46—excess over the $1926.54—amount left as a lien against this land; having thus openly given appellant credit for that difference, and then transferred, just as openly, only the remaining $1926.54 balance due on the lien, to which sum and its supporting lien the assignment, as twice thereby specified therein, was limited.

Another distinguishing feature from the Smeltzer case is that in that instance the Federal Land Bank was lending the maximum value under the Federal statute, and, in consequence, required that no other debt be made; whereas, in this case, no such maximum was shown to be involved, and Mr. Daly, the Land Bank's attorney, in his testimony, appeared to imply that it was a different type of case. Therefore, there seems nothing here to show that this appellee was guilty of any crime under 12 U.S.C.A. § 1019, as claimed by the appellant, nor is such a recovery, upon such a note as this one, shown to be in violation of any known public policy of this State.

Finally, the recitations of the assignment to the Bank the appellant so depends upon, to the effect that "of the indebtedness above described, all had been transferred to the Commissioner, and that Mrs. Miller would not accept renewal, extension, etc., of said indebtedness", when given the same construction our Supreme Court gave analogous provisions in Continental State Bank v. Pepper, 130 Tex. 71, 106 S.W.2d 654, are clearly referable only to the assigned portion of the lien debt here involved, "the unpaid balance of $1926.54". In consequence, the transfer by the appellee is thereby limited and referable only to the lien on the land upon which the Land Bank took its new deed of trust.

Under these conclusions, the trial court's judgment should be affirmed.